CASE 103—PETITION EQUITY—SEPTEMBER 23.

# Simpson v. Simpson's Ex'rs.

APPEAL .FROM SPENCER CIRCUIT COURT.

1. ANTE-NUPTIAL CONTRACT SET ASIDE FOR FRAUD.—The parties to an ante-nuptial contract stand in a confidential relation, requiring the exercise of the utmost good faith. Therefore, there must be a full disclosure of the circumstances and property of each, and if the provision secured to the wife is manifestly unreasonable and disproportioned to the means of the husband, it raises a presumption of intended concealment, and throws upon him the burden of disproving that presumption.

   Two days before the date fixed for a marriage the husband called upon the wife and proposed a marriage contract, to which she consented. Thereupon he sought a lawyer, who prepared a contract according to his dictation, which was signed by the wife, who stated after it was read to her that she understood it. After the contract was signed, the husband insisted, and the wife yielded to his entreaties, that the marriage should take place the next morning before the arrival of the wife's friends, who were expected not only to witness the ceremony, but to bring with them the wedding garments. It does not appear that the wife had any information as to the value of the husband's estate, which amounted to fifteen or twenty thousand dollars, or that she was informed as to her marriage rights. Her estate, in which the husband relinquished all interest, amounted to only one hundred dollars. By the contract, the only interest she was to have in the husband's estate upon his death was the use for life of a cottage, worth not more than a thousand dollars. The husband was a shrewd business man, while the wife was uneducated and without business experience. In this action by the wife after the husband's death to set aside the contract—*Held*—That the chancellor should have granted the relief sought.

2. GIFTS TO CHILDREN IN FRAUD OF WIFE'S RIGHTS.—As advancements made by the husband to his children were not greater in amount than a man of his means had the right to make to his children, they were not a fraud upon the wife.

G. G. GILBERT FOR APPELLANT.

1. The contract relied upon by appellees should be set aside upon the ground that appellant was overreached and defrauded in its execution. (Woodward v. Woodward, 5 Sneed, 50; Bierer's Appeal, 92 Pa. St., 266; Kline v. Kline, 57 Pa., 120; Kline's Estate, 64 Pa., 122;

Pierce v. Pierce, 71 N. Y., 157; 6 Ky. Law Rep., 740; Hair v. Hair, 10 Rich., S. C.; Viele v. Judson, 82 N. Y., 324; Bull v. Rowe, 13 S. C., 355; Leather Manufacturing Bank v. Morgan, 117 U. S., 96; Forwood v. Forwood, 9 ;Ky. Law Rep., 417; s. c., 86 Ky., 114; Markland Co. v. Kimmel, 87 Ind., 560; Janeson v. Janeson, 66 Ill., 259; Griffen v. Nichols, 51 Mich., 575.)

2. The husband having persistently disregarded the contract during his life, his representatives cannot insist upon its enforcement after his death. (Woodward v. Woodward, 5 Sneed, ;Tenn.) 50.)

FAIRLEIGH & STRAUS for appellees.

1. There is nothing in the record upon which any fraud can be predicated in the first instance, and certainly nothing upon which this court would be warranted in setting aside the finding of the chancellor.

2. The contract in this case, under all the circumstances surrounding the parties, was reasonable, just and equitable. But even if not, the chancellor has no power to refuse to enforce an ante-nuptial contract merely because he may regard its provisions inequitable. (Forwood v. Forwood, 86 Ky., 114.)

L. A. WEAKLEY of counsel on same side.

JUDGE PRYOR delivered the opinion of the court.

This action in equity was instituted in the Spencer Circuit Court by Mattie S. Simpson, the appellant, against the executor and devisees of the last will of her husband, John R. Simpson, for the purpose of canceling an ante-nuptial contract made between the appellant, whose maiden name was Mattie Swope, and John R. Simpson, the testator, on the evening preceding their marriage.  The provisions of the will were renounced by the appellant, and she now claims she is entitled to dower and her distributable share of the personalty of her husband's estate, upon the ground that the marriage contract is a nullity.

The marriage contract was entered into on the 16th of July, 1888—was signed and acknowledged by both parties and recorded.  The marriage took place the

day after the contract was entered into, and the parties. lived together as man and wife until his death in September, 1891, and this action instituted in October of that year.

The husband, at the date of the marriage, was possessed of an estate of fifteen or twenty thousand dollars, and the wife's estate not exceeding in value one hundred dollars. He was about sixty-eight years of age, and was a shrewd business man, and from the proof in this case economical to an extent that deprived his wife at least of the comforts and necessaries of life; converted his wife into a cook soon after the marriage; clothed and controlled her as one would the most abject menial in his service. The wife, at the date of the marriage, had passed the age of fifty, was uneducated and without any business experience.

The testator, her husband, at the date of the marriage, had two children, both sons, and each with a family, and in comfortable pecuniary circumstances. The agreement to marry having been entered into, the day fixed for its consummation was Thursday, the 17th of July, 1888. The friends of the appellant, who lived in Louisville, were invited to the wedding, and were having such clothing made for the appellant as suited the occasion. On the Tuesday preceding the day the marriage was to take place, in the evening, the testator called on the appellant, and suggested the making of a marriage contract, to which the appellant, it seems, assented. He left the house, and in a short time returned with his lawyer, who had prepared the contract in his office as directed by the testator, and had it read over once to the

appellant, and being asked if she understood it, and her response being "*yes*," the parties both signed it, and the clerk being present, took the acknowledgment and recorded the instrument. As soon as the contract was signed, and the witnesses to it had retired, the testator insisted on their marriage taking place at five o'clock the next morning (Wednesday), the day preceding the day to which the friends had been invited. Her wedding outfit had not been sent from Louisville, but still the testator was persistent, and the woman compelled to marry, as the testimony shows, with such scanty clothing as would doubtless have proved distasteful to those of less mature years than the parties to this alleged agreement. At the time this contract was signed, or before, there was no explanation made to the appellant as to the nature of the marital rights she was about to surrender, or the character and extent of the estate of the testator. He was reputed by some to be a man of wealth, and known by all business men in his town to have been, at the time, in independent circumstances; but still his estate was invisible, or composed mostly of cash and cash notes, and when dealing with this inexperienced and uneducated woman, it was his duty not only to have explained to her what rights she was surrendering, but to develop to her, approximately at least, the value of his estate.

His lawyer doubtless supposed that the parties understood each other, and wrote as directed by the testator, and while no blame is to be attached to him, still here was a shrewd business man with his counsel on the one side, and an illiterate, uneducated woman

on the other, the latter parting with all of her marital rights in an estate worth fifteen or twenty thousand dollars, for the use of a house and lot worth not .exceeding one thousand dollars, for her life· only, and the relinquishment by the husband of his interest in her estate that had no value to it. No one of her friends present to advise with her on the subject, and the wedding hastened before friends could arrive to witness the ceremony, and bring with them the wedding garments. Why such haste? Was it the ·fear that those of her friends more intelligent than the appellant, should arrive and give to the appellant the advice she was entitled to have in the first place? The parties were not dealing at arms length, and while marriage contracts, when entered into in good faith and without fraud or imposition, will be upheld in equity, however inadequate the pecuniary consideration, as said by the court in Pierce v. Pierce, 71 New York, 157: "The authorities go very far in holding that the courts require strong proof of fairness when called upon to enforce an ante-nuptial contract against the wife, and especially when it is apparent that the provision made for the wife is inequitable, unjust and unreasonably disproportionate to the means of the husband. The rule undoubtedly is that in such a case every presumption is against the validity of the contract, and the burden of proof is cast upon the husband, or those who represent him, in order to uphold and enforce the same as a subsisting agreement."

In Bierer's appeals, reported in 92 Pa. State, 266, the contention was as to the validity of an ante-nup-

tial contract between Everhart Bierer and Ruth Shaw. The court said: "It is a sound rule that parties to an ante-nuptial contract do not, like buyer and seller, deal at arms length, but stand in a confidential relation, requiring the exercise of the greatest good faith. There must be a full disclosure of the circumstances and property of each. If the provision secured to the wife is manifestly unreasonable and disproportionate to the means of the intended husband, it raises a presumption of intended concealment, and throws upon him the burden of disproving that presumption." Bierer, in that case, was worth about sixty thousand dollars, and Ruth without property of any value. It was agreed that in thirty days after his death she was to be paid five dollars, and that whatever property she had or might acquire should remain hers. In consideration of this she released her marital rights. It was shown in that case that the parties lived in the same neighborhood for many years, and the circumstances of each were known, to some extent, to the other, but the court held that this general information was insufficient to prove knowledge approaching correctness of the value of his property, and that it was not such a contract as a court of equity should enforce.

The case before us presents as strong facts and circumstances, regardless of the testimony of the appellant, much of which is incompetent, for refusing to enforce this agreement as the case of Bierer's appeals. In each case the evidence of fair dealing that must characterize all such contracts is wanting, and here it is manifest that this woman, if advised by friends, or

if of sufficient intelligence to have known her marital rights, would never have entered into a contract that reduced her to a mere menial, and left her at the death of her husband in the possession of a little cottage, disrobed of its furniture, and she penniless for the means of support and maintenance. On the evening of the execution of the contract, with her wedding day fixed and her friends invited, she was powerless to resist the will of one so vastly her superior, and to whom she had pledged her affections upon the promise that he would protect and care for her during life ; as powerless at that time as she was to resist, after the contract was signed, his importunities to marry him, in the absence of her friends, at five o'clock the next morning. She was subordinated to his will, as the facts show, both before and after marriage. She surrendered to him, in a short time, on his demand, the keys of the pantry and the meat house, and was supplanted in every thing that pertained to her domestic duties, and even handed over to him, at his instance, the small sums of money that were derived from the sale of her vegetables in the garden. It is a case of the exercise of an unlimited and tyrannical control by the husband over the wife's action from the date of the marriage contract until his death.

The case of Forwood v. Forwood, reported in 86 Ky., 114, is relied on by both sides as authority in this case. In that case the allegations made by the wife were denied, and no proof whatever taken, and this court said : "If it appeared the appellant was inveigled into making this contract by unfair means, such as taking advantage of her ignorance,

her affections, or concealing the truth from her, we would not hesitate to set the contract aside. But such a case does not appear. She fails to allege she did not know the nature and legal effect of the contract, nor does she allege she did not make it freely and voluntarily." "It is clear," the court further said: "that she understood its meaning, for the proof is clear she was a woman of intelligence and possessed a clear and cool judgment, and she knew that her intended husband was a man of reputed wealth, and three years after her marriage she stipulated in writing, drawn by herself, that she was not entitled to dower in her husband's realty, because she had relinquished it by the ante-nuptial contract."

The cases are entirely dissimilar, with the exception that each purports to be an ante-nuptial contract. After a most careful reading of the record, we have no hesitation in concluding that the appellant was imposed on by her intended husband, and that with promises of relieving her from the burden of a daily labor that was necessary by reason of her poverty, she was induced to become his wife and to execute a contract that is full of fraud, as shown from the facts connected with its execution.

There are some averments in the petition as to monies or property the testator had advanced his children, with a view of defeating the claim of the wife for dower and distribution. We think a man of his means had the right to give to his children the sums alleged, and that this was no fraud on the wife. As to the property, including lands, choses in action, money, &c., belonging to him at his death,

the widow is entitled to dower and her distributable share as widow. The ante-nuptial contract is directed to be canceled, and the marital rights of the appellant enforced.

∴ The judgment is reversed, and the case remanded for proceedings as herein indicated.