## PENCE, Ex'r, v. COLE.
## In re ESTATE of COLE.

No. 10052—Opinion Filed Feb. 14, 1922.

(Syllabus.)

1. **Husband and Wife — Antenuptial Contracts—Validity.**

An antenuptial contract entered into between a man and a woman in contemplation of their marriage that is just and reasonable will be upheld by the courts.

2. **Same—Contract Executed in Another State—Effect Upon Property Rights Acquired in Oklahoma.**

When such a contract is entered into in another state and the parties within a few months after their marriage remove to Oklahoma and both acquire property in Oklahoma in their own names and handle all of their property and financial affairs separate and apart from that of the other in full conformity with the terms of the antenuptial contract, this constitutes prima facie evidence that the parties intended such contract to govern their rights concerning their property in Oklahoma, provided such contract does not contain limitations that would exclude such intention.

3. **Husband and Wife—Estate of Wife—Conveyances—Wills.**

A married woman may dispose of all her separate estate by will, without the consent of her husband, and may alter or revoke the will in like manner as if she were single. Her will must be executed and proved in like manner as other wills. Section 8339, Revised Laws of Oklahoma, 1910.

4. **Same—Right to Bequeath More than Two-Thirds of Estate Away from Husband—Effect of Antenuptial Contract.**

Under section 8341, Revised Laws of Oklahoma, 1910, a wife may, by authority of an antenuptial contract, in writing bequeath more than two-thirds of her property away from her husband.

5. **Same—Right of Surviving Spouse to Homestead.**

The right of the surviving spouse to continue to possess and occupy the homestead is an individual right, and not an interest in the testator's property. This right is not subject to testamentary disposition, and

does not pass under the decedent's will. Neither is the surviving spouse deprived of this right by virtue of an antenuptial contract which provides that the property of each shall remain their separate and individual property and that the other shall not have any interest therein.

### 6. Same—Statute.

The provisions of section 6328, Revised Laws 1910, are for the benefit of the surviving spouse and minor children, if any there be. Under said statute the right to continue to possess and occupy the homestead is reserved for such surviving spouse as his homestead.

### 7. Same—Postponed Right of Devisee to Homestead.

Where the title to the homestead is vested in the wife, and she under the rights given her by an antenuptial contract devises all of her real estate, including the homestead, away from her husband, the right of the devisee to possess and occupy the homestead is postponed under said section 6328, supra, until the rights of the surviving spouse to continue to possess and occupy it have terminated.

Error from Superior Court, Tulsa County; M. A. Breckinridge, Judge.

Proceeding instituted in the County Court of Tulsa County in the administration of estate of Mary J. Cole, by George E. Cole, her surviving husband, against L. B. Pence, executor of her will, to have set off to him certain property belonging to his wife at the time of her death. The Superior Court of Tulsa County rendered judgment in favor of L. B. Pence, executor, as to part of the property, and in favor of George E. Cole as to part of the property. Both parties appealed. Affirmed.

F. D. Prentice and Bailey E. Bell, for plaintiff in error.

C. R. Thurlwell, S. A. Boorstin, and McGuire & Devereux, for defendant in error.

MILLER, J. This is a proceeding instituted in the county court, sitting as a court of probate, of Tulsa county in the matter of the estate of Mary J. Cole, deceased, L. B. Pence, executor, by George E. Cole, who was the husband of Mary J. Cole at the time of her death, to have set off to him certain property as the homestead of the said Mary J. Cole and George E. Cole which they were occupying at the time of the death of the said Mary J. Cole. The said George E. Cole also filed another petition in the same proceeding asking that he be given all of the property of the said Mary J. Cole for the reason that it was community property which was acquired during coverture, and this petition

further asked that he be given one-third of the property in any event, for the reason that under the laws of Oklahoma the wife could not, by will devise or otherwise, deprive her husband of more than two-thirds of her property.

The proceedings were tried in the county court, and judgment rendered in favor of L. B. Pence, executor, and against George E. Cole on all the issues raised. George E. Cole then appealed to the district court of Tulsa county. By proper orders of the district court of Tulsa county, this case was transferred to the superior court of Tulsa county. A trial in that court resulted in a judgment setting aside to George E. Cole, for his use during his lifetime, certain property as the homestead and two-thirds of the personal property, and findings and judgment against George E. Cole on all other issues raised. Motion for a new trial was filed by each of the parties, notices of appeal given, and this appeal perfected by L. B. Pence, executor, as plaintiff in error. George E. Cole filed a cross-petition and appears here as defendant in error, and the parties will be so designated. A brief review of the facts are as follows:

On September 17, 1902, in Fulton county, Indiana, George E. Cole was united in marriage with Mary J. Eash. Prior to their marriage and on the same day, they entered into the following antenuptial agreement:

"This agreement, made and entered into this 17th day of September, 1902, between George E. Cole of Fulton county, Indiana, and Mary J. Eash of Fulton county, Indiana.

"Witnesseth:

"That the said parties hereto mutually promise to intermarry, that said Cole is a widower having grown up children by a former wife and owns property accumulated by the joint efforts of himself and deceased wife, that Mary Eash is a single woman over the age of twenty-one years and has property in her own right.

"Now for arranging all rights of property said parties agree as follows: That all the property owned by said Mary J. Eash shall remain and be her sole and separate property, and all the property owned by said George E. Cole shall remain and be his sole and separate property and the rents and profits of the property of both shall be used for their support during the continuance of said marriage, that at the death of said George E. Cole all of the property owned by said Mary J. Eash shall go to and be hers and one-third of all the personal property that they may have accumulated by their joint efforts during their married life, after paying taxes, assessments and

living expenses, shall be and remain hers, and all the property owned both personal and real by George E. Cole and two-thirds of the personal property accumulated by their joint efforts during the continuance of their said marriage and all other property owned by him at the date of his death shall go to his children and heirs free from any claim of Mary J. Eash.

"It is further agreed, that if said Mary J. Eash does not remain a good, true and faithful wife until the death of said Cole, if she separates from him, then in that event she is not to have any property, except that now owned by herself. But no one is permitted to bring a complaint for the want of love, fidelity and care to said Cole but he himself unless brought during his lifetime.

"This agreement is made in consideration of the said proposed marriage and is in lieu of the rights of said Mary J. Eash under the law as widow, and of the rights of the said George E. Cole under the law as widower, and is signed and accepted by each of said parties freely and without restraint after having fully informed themselves of its meaning and contents.

"Witness our names signed by us this 17th day of September, 1902.

"George E. Cole.
"Mary J. Eash."

This contract was duly acknowledged and filed for record in the office of the recorder of Fulton county, Indiana. Shortly after said marriage, and in 1913, the said George E. Cole and Mary J. Cole, his wife, removed to Tulsa, Oklahoma, and there resided from that time until just prior to the death of the said Mary J. Cole, which occurred in October, 1916. A few months prior to the death of Mary J. Cole, she and her husband returned to Fulton county, Indiana, on account of the illness of Mary J. Cole and for the purpose of receiving treatment from a certain physician residing there.

On the 6th day of October, 1916, and prior to her death, Mary J. Cole executed her last will and testament, which is as follows:

"I, Mary Jane Cole, being of lawful age and sound in mind and disposing memory do make and publish this my last will and testament.

### "Item I.

"It is my will that as soon as practical after my decease all my just debts be paid including funeral expenses and last doctor bill.

### "Item II.

"I give, devise and bequeath to my beloved husband, George Cole, the one-third in value of all the property that I may die seized of, both personal and real to have and to hold during his natural lifetime and no longer. At the death of my said husband it is my will that the said one-third of my property held by my said husband shall go to my brothers and sisters equally amongst them, share and share alike.

### "Item III.

"Of the remaining two-thirds of all my property both personal and real I give, devise and bequeath to my beloved nephews and nieces, Clarence D. Eash, Ralph D. Eash, John T. Eash (children of my brother Charles Eash), Leo L. Eash (son of my brother, John Eash), Bernice Eash and Grace Eash (children of my brother, Michael Eash) and Cleo Wildermuth and Ruth Bentchler and Herschel Goss (children of my sister Amelia Goss) the sum of one thousand dollars each if my estate amounts to twenty thousand dollars. If estate is less than $20,000.00 then the bequests shall be proportionately less.

### "Item IV.

"Whatever remains of my property after compliance with the above bequests I give, devise and bequeath to my beloved brothers, Charles Eash, Michael Eash and John Eash, and my beloved sister Amelia Goss, to be divided among them share and share alike.

### "Item V.

"I hereby nominate and appoint L. B. Pence, of Tulsa, Oklahoma, executor of this my last will and testament and direct that he sell the real estate in the city of Tulsa, Oklahoma, for the best price obtainable and carry out the provisions of this will as speedily as possible.

"In witness whereof I have hereunto subscribed my name this 6th day of October, 1916.

"Mary J. Cole."

This will was witnessed by three witnesses, and on the 16th day of November succeeding the death of Mary J. Cole, the will was filed for probate in the county court of Tulsa county. George E. Cole filed his objections, contest, and opposition to the probate of said will on the ground that the instrument was not the last will and testament of Mary J. Cole; that undue influence was used in procuring the same; that Mary J. Cole was not competent to execute a will, because she was under the influence of drugs necessarily administered to relieve her pain and suffering; that will was not executed and published according to the laws of Oklahoma; that it purported to deprive her husband of more than two-thirds of her property; that the property therein bequeathed was community property, having been accumulated by their joint efforts during cov-

erture, and that the property was the homestead of the contestant and the deceased at the time of her death. Thereafter a trial was had in the probate court and the following order made:

"On this the 23rd day of February, 1917, there came on for hearing the petition of L. B. Pence, to have admitted to probate the paper filed herein on the 16th day of November, 1916, by Charles Eash, of Rochester, Indiana, which paper writing purported to be the last will and testament of Mary J. Cole, deceased; and the objections, contest and opposition to probate of will by George Cole, the husband of the deceased, and the issues on the contest having been made up, the petitioner, L. B. Pence, appeared in person and by his attorneys, Prentice & Mason, and George Cole, contestant, appeared by C. R. Thurlwell and McGuire & Devereux, his attorneys, and all parties announced ready for hearing; and witnesses being duly sworn and examined in open court and the depositions of the subscribing witnesses to the will and those on behalf of the contestant, George Cole, having been read and examined by the court. And the court having heard and considered all of the evidence of the contestant in opposition to probating said will; and having examined the notices to the next of kin and the parties interested, and being fully advised in the premises, does find that all parties interested as heirs and devisees of said decedent, were duly notified according to law of the hearing of said petition to probate said will. And does find that the instrument produced herein for probate was duly executed by the decedent, and that at the time of the execution thereof, said testator was of full age, of sound mind and memory, and was not acting under duress, menace, fraud, or undue influence, and that said will was executed in all particulars as required by law.

"It is therefore, ordered, adjudged and decreed by the court that said instrument be admitted to probate as and for the last will and testament of said deceased, and that the same be and hereby is established as a valid will of Mary J. Cole, deceased, passing both real and personal estate, and that L. B. Pence named as executor under said will and who was heretofore appointed by this court as such executor in order to properly care for the property of decedent, is hereby approved and confirmed and that the bond heretofore furnished by said executor is hereby approved. That the costs in connection with the contest and opposition to the probate of said will by George Cole in the sum of $_____ is hereby taxed to George Cole. To all of which, the contestant, George Cole, duly excepts

"H. L. Standeven. County Judge."

This order of the court was not appealed from. It is suggested by plaintiff in error that this order and judgment is res judicata as to all of the issues raised by the objections in-

terposed against admitting the will to probate. Section 6210 of the Revised Laws of Oklahoma of 1910, provides for the proceedings on contest of a will, and that it may be contested on the following grounds:

"First. The competency of the decedent to make a last will and testament;

"Second. The freedom of the decedent at the time of the execution of the will from duress, menace, fraud, or undue influence;

"Third. The due execution and attestation of the will by the decedent or subscribing witnesses; or,

"Fourth. Any other questions substantially affecting the validity of the will must be tried and determined by the court."

Section 6219, Revised Laws of Oklahoma, 1910, specifies the causes upon which a will may be contested after it has been probated.

Section 6225, Revised Laws of Oklahoma, 1910, then provides:

"If no person, within one year after the probate of a will, contests the same or the validity thereof, the probate of the will is conclusive, saving to infants and persons of unsound mind, a like period of one year after their respective disabilities are removed."

If a person would be precluded under section 6225, supra, after the expiration of one year if he did not contest, does it follow that if he contests and the judgment goes against him, he is thereby precluded from raising any of the questions that he could have or did raise in the contest? Section 6501, Revised Laws of Oklahoma, 1910, provides for taking appeals to the district court from the judgment of the probate court, admitting or refusing to admit a will to probate. Defendant in error did not avail himself of this remedy, but ignored it.

See Ward v. Board of County Commissioners, 12 Okla. 267, 70 Pac. 378; Proctor v. Dicklow, 57 Kan. 119, 45 Pac. 86.

In a well-reasoned opinion by Mr. Justice Davis in the case of Gaines v. New Orleans, 73 U. S. 642, 18 L. Ed. 950, the court says:

"The attempt to impeach the validity of this will shows the importance attached to it by the defense in determining the issue we are now considering. But the will cannot be attacked here. When a will is duly probated by a state court of competent jurisdiction, that probate is conclusive of the validity and contents of the will in this court."

We are only referring to this question because it is suggested, and not assuming to decide it, as it is intimated that the contest was dismissed by George E. Cole. The order of the court clearly shows that the contest was fully presented by Cole and considered by the

court. We are not deciding that there would be any difference between dismissing the contest and having judgment rendered, admitting the will to probate over the persistent objection of the contestant. The real reason we are not deciding the question of res judicata is that it has not been strenuously urged or briefed, and in our view of this case it can be disposed of without deciding that question.

The record discloses that George E. Cole died subsequent to the institution of these proceedings and that this proceeding has been revived and is now being prosecuted in the name of Albert Cole, administrator of the estate of George E. Cole. Each of the parties has made numerous assignments of error on which he relies, but they are discussed in their briefs under the general proposition of whether or not the judgment of the trial court is correct. The real points that they have raised, as we gather from the briefs, are: First: Was there an antenuptial agreement, which affected the property in controversy? Second: Was the clause in the will giving to George E. Cole a one-third interest during his lifetime void, because made in violation of expressed statutes? Third: Was George E. Cole entitled to the homestead notwithstanding the antenuptial contract?

The undisputed evidence is that Mary J. Cole, just prior to or at about the time of her marriage to George E. Cole, received approximately $985 from her father's estate; this sum being paid to her in money by her brother, who was the administrator of that estate. She had never been married, and was about 18 years younger than her husband. George E. Cole had several children by a former marriage and had some property. No children were born to Mary J. Cole and George E. Cole. When these parties removed to Tulsa, Oklahoma, George E. Cole purchased the property in controversy in this action for $600 and paid for it with the money of Mary J. Cole, and the deed was taken in her name, and it always remained her property. There was a small house on the property, at the time it was purchased, in which they lived. Afterwards three other houses were built on this property and the small home enlarged and repaired.

It was shown by the plaintiff in error that George E. Cole had property of the value of more than $20,000 with a rental income of $300 per month. Defendant in error complains that this was not sufficiently proven. There was evidence introduced tending to establish this as a fact, and he did not attempt to disprove it or even take the witness stand. However, the value of his property was immaterial in determining his rights in this case. He did have some property and money, for it is shown that he loaned his wife money at different times, and he admitted to some of the witnesses, who testified for the plaintiff in error, that his wife had paid him back all she owed him. It was further shown that she at one time had to borrow money from some person other than her husband to pay the taxes on her property; that she kept boarders and roomers, did washings, baked bread and pastries and sold them, and did various other kinds of work. From these sources, the rents received from her property, and the increase in value of her Tulsa real estate, her estate was probably worth $15,000. The defendant in error introduced testimony of certain witnesses to the effect that he had loaned his wife money at different times, or had furnished her money. The man from whom the property in controversy was purchased testified that he sold the property to George E. Cole and that George E. Cole paid him for it, but that the deed was made to Mary J. Cole. It is clear he merely negotiated the deal for his wife and used her money to pay for the property.

The antenuptial contract not being denied, the court erroneously cast the burden of proof upon the plaintiff in error. Notwithstanding this error on the part of the court, the plaintiff in error, as we think, established by a preponderance of the evidence all of his contentions, and the court found in favor of plaintiff in error on all questions of fact. The right of George E. Cole to use or inherit the homestead under the facts established became a question of law.

The evidence conclusively discloses careful and scrupulous business dealings between Cole and his wife. They kept their money and property each separate and apart from that of the other; it was not intermingled in any way. One witness testified to a dealing between the two on their different properties, whereby he was paying them some money for rents he had collected. He did not have the exact change and paid more money to Mary J. Cole than was due her; $4.15 of the amount paid her belonged to George E. Cole. She immediately and in the presence of this witness went to a drawer and took therefrom $4.15 and paid it to George E. Cole. The evidence fully sustains the findings of the court that this was not community property and not accumulated by their joint industry, but was the separate property of Mary J. Cole.

The antenuptial agreement provides:

"That all the property owned by said Mary J. Eash shall remain and be her sole separate property. * * * That at the death of said

George E. Cole all the property owned by said Mary J. Eash shall go to and be hers."

This defined what property was contemplated by the parties that should belong to Mary J. Cole, nee Eash, to wit: All the property owned by her. The agreement further states:

"This agreement is made in consideration of the said proposed marriage and is in lieu of * * * the rights of the said George E. Cole under the law as widower."

The dealings of the parties show that they intended this contract to apply to their property in Oklahoma, as they each kept their property separate and apart from the property of the other. It was not mixed in any way, and during all their married life they lived up to the terms of, and made all their dealings conform to, the antenuptial contract. Their every act shows they intended this contract to govern the distribution of their property notwithstanding they had removed from Indiana to Oklahoma. The decisions cited by defendant in error do not conflict with this theory.

In Stilley v. Folger, 14 Ohio Reports, 610 we quote from page 649:

"Why, then, should not this agreement be enforced? Antenuptial contracts have long been regarded as within the policy of the law, both at Westminster and in the United States. They are in favor of marriage and tend to promote domestic happiness, by removing one of the frequent causes of family disputes — contentions about property, and especially allowances to the wife. Indeed we think it may be considered as well settled, at this day, that almost any bona fide and reasonable agreement, made before marriage, to secure the wife in the enjoyment either of her own separate property, or a portion of that of her husband, whether during the coverture or after his death, will be carried into execution in a court of chancery. Though, for many purposes, by the marriage, the legal existence of the wife is merged in that of her husband, the law recognizes her legal and separate identity and her separate rights; and she may preserve the one and enforce the other, in contracts of this character."

In Broadstone v. Baldwin, vol. 5, Ohio Nisi Prius Reports, 39, the court upheld the antenuptial contract and held it was a bar to the widow's year's allowance:

"It is claimed that an antenuptial contract will not bar a widow of a year's allowance, no matter what its terms and provisions may be. This may be conceded where there are minor children under the age of 15 years, at the time of the death of the husband. It is further claimed that an antenuptial contract which gives nothing to a widow in lieu of a year's allowance, will not bar it even though such a contract based upon a good pecuniary consideration might do so. The marriage was a sufficient consideration to support the contract. Schouler on 'Husband and Wife,' secs. 348-9; 1 Bishop on 'Married Women,' secs. 775, 805, 806; Tiernan v. Binns, 92 Pa. St. 252; Barrante v. Gott, 6 Barber, 492; Hafer v. Hafer, 33 Kansas, 449; Charles v. Charles, 8 Grattan (Va.) 486; Gelzer v. Gelzer, 1 Bartley's Eq. (S. C.) 379; Nail v. Maurer, 25 Md. 532. Even as against creditors in the absence of fraud. Otis v. Spencer, 102 Ill. 622; Frank's Appeal, 59 Pa. St. 190; Prewit v. Wilson, 103 U. S. 22; Hollingsworth et al. v. Thompson, 7 Peters, 348. The mutual stipulations of the parties not to make any claim in the property or estate of the other, are alone sufficient, Peck v. Peck, 12 R. I. 485; Nail v. Maurer, 25 Md. 532; Barrante v. Gott, 6 Barber, 492; Cauley v. Lawson, 5 Jones Eq. (N. C.) 132; Andrews v. Andrews, 8 Conn. 79; Sutherland v. Sutherland, 25 Bush (Ky.) 591: Barth v. Lines, 118 Ill. 374; Phelps v. Phelps, 72 Ill. 545; McGee v. McGee, 91 Ill. 549; see also Murphy v. Murphy, 12 Ohio St. 407. Whether an antenuptial contract which has been performed will bar the year's allowance to the widow where she agrees not to claim such allowance, has not been passed upon by the Supreme Court of this state."

In this case the court held the antenuptial contract binding, and that it did bar the year's allowance. The last part of the syllabus reads as follows:

"After the death of the husband the widow claimed the year's allowance, and the same was set off to her in money. There were no children of the marriage, and neither of the parties had minor children living at the time of the death of the husband. In an action against the administratrix of the estate of the husband to recover said allowance. held: Said contract is founded on a good and sufficient consideration, opposed to no rule of public policy, and is a bar to the year's allowance."

Hafer v. Hafer. 36 Kan. 524, paragraph 2 of the syllabus, reads:

"Where an antenuptial contract is just and reasonable in its provisions, and was fairly made by parties competent to contract, it should be upheld and enforced as to all the property of the parties contracting. including the homestead. when the same becomes subject to partition."

This case was before the Supreme Court of Kansas, and the parties' rights under the antenuptial contract were more clearly defined in 33 Kan. 449, where the court announced the law as follows:

"The statutes of Kansas recognize the right of parties contemplating marriage to make settlements and contracts relating to and based upon the consideration of marriage, and an antenuptial contract providing a different rule than the one prescribed by law for settling their property rights, entered into by persons competent to contract, and which, considering the circumstances of the parties at the time of making the same, is reasonable and just in its provisions, should be upheld and enforced.

"H., a widower who was fifty-six years of age, had a family of seven children, all of whom had reached majority except the youngest one, and who, with the united labor of his deceased wife and children, had accumulated a property of the value of $14,000 and upwards, in good faith entered into an antenuptial contract with B., a maiden lady of twenty-six years of age, who was possessed of two cows and $40, whereby they agreed that each should separately enjoy and have the untrammeled control of his and her own property, as well as the increase and profits thereof, and that if she should survive him she would receive from his estate a child's part; 'that is, his estate shall be divided into an equal number of parts, equal to the number of children of said H., plus one, and the said B. shall receive one of said parts and no more.' On the same day they were married and in less than three years afterward, H. died, leaving property of the aggregate value of $19,000. The widow claimed an allowance of one-half under the law of descents and distributions, alleging that the contract was void because it was inequitable and uncertain. Held, That the provisions therein made for the widow were just and reasonable, and that the contract cannot be held invalid on the ground of uncertainty in stating the share of his estate to which she was entitled.

"Marriage is a good and sufficient consideration to sustain an antenuptial contract.

"Where the homestead of an intestate is still occupied by his widow and minor child, it is not subject to partition until the widow again marries or the child reaches majority, notwithstanding the antenuptial contract of the widow and her deceased husband, and notwithstanding the minor may, by her next friend, ask for its partition."

In upholding an antenuptial contract, the Supreme Court of Kansas, in Barlow v. Barlow, 28 Pac. 607, lay down the following rule:

"Where a husband and wife reside in another state, and she has a considerable amount of property, and he has none, and he is nearly blind, and they agree to come to Kansas and procure land, which shall belong to her, and they come and settle upon a quarter section of government land, intending to procure the title under the United States homestead law, and the entry thereof is made in his name, but she furnishes all the money to pay the costs and expenses thereof, and to make all improvements thereon, and valuable improvements are made thereon, and, when final proof is made, it is made in his name, but still it is the intention and agreement of the parties that the property shall be hers, and he agrees to convey the title to her as soon as the patent shall be issued, she agreeing to furnish him a home thereon as long as he shall live, and they continue to reside upon the property, and she continues to make improvements thereon, and in a little more than one month after the final proof is made the husband dies intestate, and without executing to his wife any deed for the land, held, that, under the facts of the case, the wife is entitled to the property."

In Charles v. Charles, 8 Gratt, (Court of Appeals of Virginia) 486, the syllabus is as follows:

"The rights of a husband to the property of his intended wife, may be intercepted by his agreement to that effect. And where by express contract before and in contemplation of marriage, for which the marriage is a sufficient consideration, he agrees to surrender his right to the enjoyment of the property during the coverture, and his rights to take as survivor, there remains nothing to which his marital rights can attach during the coverture, or after the death of the wife. In such case the wife is to all intents to be regarded as a feme sole in respect to such property; and there is no necessity that the marriage contract or settlement should limit the property to her next of kin upon her failure to appoint; but it will pass as if the wife died sole and intestate.

"If the husband has relinquished his marital rights to his wife's property, he is not entitled to administration upon her estate."

See, also, Heald's Appeal, 22 N. H. 265; Young v. Hicks, 92 N. Y. 235.

Counsel for defendant in error say that in drawing said contract it was expected that George E. Cole would die first, being the older of the two, and the contract does not provide how her property shall go in event she died first. Such a contention comes clearly within the statements made by Wood, C. J., in Stilley v. Folger, supra:

"What person so exposed to imposition as a woman, contracting, personally, with her intended husband, just on the eve of marriage, at a time when all prudential considerations are likely to be merged in a confiding attachment, or suppressed from an honorable instinct and sentiment of delicacy?" Surely, 'it would be a reproach to the law, if the very virtues and graces of woman were thus allowed to become the successful means of overreaching and defrauding them in bargains."

The contract is binding on the parties. It specifically covers all property that either might die seized of and provides that it shall govern the rights of the parties either as widow or widower. They have observed all of its provisions in acquiring their property in Oklahoma, and it clearly appears they have intended it should apply to their property wherever situated.

"One of the cardinal rules applicable in the construction of antenuptial contracts is to disregard the form of contract, if the intention of the parties in making the agreement can be ascertained, and give force and effect to the intent of the parties." Hoefer, Ex'r, et al. v. Probasco, Adm'r, 80 Okla. 261, 196 Pac. 138.

It is next contended by defendant in error that Mary J. Cole could not deprive her husband of more than two-thirds of her property.

The sections of the Revised Laws of Oklahoma, 1910, that govern this question are as follows:

"Section 8338. Every person over the age of eighteen years, of sound mind, may by last will, dispose of all his estate, real and personal, and such estate not disposed of by will is succeeded to as provided in this chapter, being chargeable in both cases with the payment of all the decedent's debts, as provided in civil procedure.

"Section 8339. A married woman may dispose of her separate estate by will, without the consent of her husband, and may alter or revoke the will in like manner as if she were single. Her will must be executed and proved in like manner as other wills."

"Section 8341. Every estate and interest in real or personal property to which heirs, husband, widow, or next of kin might succeed, may be disposed of by will; Provided, that no marriage contract in writing has been entered into between the parties; no man while married shall bequeath more than two-thirds of his property away from his wife, nor shall any woman while married bequeath more than two-thirds of her property away from her husband. * * *"

The proviso in section 8341, supra, in effect says this: "No woman while married shall bequeath more than two-thirds of her property away from her husband if no marriage contract in writing has been entered into between the parties." We have seen that there was a marriage contract entered into between the parties, and therefore the provisions of the will were not in violation of the proviso in the statutes.

It seems to us that the first and second questions have been conclusively answered.

The antenuptial agreement does affect the property in controversy, and the rights of George E. Cole are governed by the contract and the will, and not by the statute.

Defendant in error contends that section 6328, Revised Laws of Oklahoma, 1910, governs in this case and under that law the will is absolutely void. The part of the said section defendant contends is applicable in this case reads:

"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age. * * *"

One tract of the land belonging to the testatrix was occupied by the testatrix and her husband as their home, and was thereby impressed with the homestead and inalienable except by a writing subscribed by both husband and wife. Hawkins v. Corbit, 83 Okla. 275, 201 Pac. 649.

By section 8341, supra, a woman while married is prohibited from bequeathing more than two-thirds of her property away from her husband, provided no marriage contract in writing has been entered into between the parties. The antenuptial marriage contract is the writing subscribed by both husband and wife which permitted the testatrix to bequeath more than two-thirds of her property away from her husband, and constitutes the exception or proviso specified in said section 8341, supra. Because of the antenuptial contract between George E. Cole and Mary J. Eash, she could bequeath all of her property away from her husband.

The right of the surviving spouse to continue to possess and occupy the homestead is an individual right, and not an interest in the testator's property. This right is not subject to testamentary disposition, and does not pass under the decedent's will. Neither is the surviving spouse deprived of this right by virtue of an antenuptial contract which provides that the property of each shall remain their separate and individual property, and that the other shall not have any interest therein.

Section 6328, supra, does not attempt to place a limitation on the right of either the husband or wife to bequeath any or all of their property. Its office is to protect the surviving spouse in the possession and occu-

pancy of the homestead. That section does not affect the validity of the will. With the bequests specified in the will as they are, if it had provided, in event the husband survived the testatrix, that the husband, George E. Cole, should have the right to continue to possess and occupy that part of the property impressed with the homestead character so long as he used it as such, the full purpose and intent of that part relied upon in said section 6328, supra, would have been set out in the will.

Whether or not George E. Cole should continue to occupy the property as his home after the death of his wife depended upon at least two contingencies existing at the time the will was executed. First, it was contingent upon whether or not George E. Cole survived his wife. Second, it was contingent upon whether or not George E. Cole desired to continue to occupy the premises as a home.

The fact that the provisions of said section 6328, supra, were not incorporated in the will did not invalidate the will. That being a section of the statutes—and instruments of writing are presumed to be drawn in view of the provisions of the statutes—it was not necessary to set out the provision in the will, especially in view of the contingencies that might intervene. The will should be construed in the light of that provision of the statute.

In Bacus v. Burns et al., 48 Okla. 285, 149 Pac. 1115, this court said:

"(b) That under the Constitution the homestead is reserved to the family, and, upon the death of said testator, his surviving wife, under section 6328, Rev. Laws 1910, had the right to continue to use and occupy the homestead during her lifetime; this right was hers individually, and not an interest in testator's property, and therefore not subject to testamentary disposition, and did not pass under said will, and her right to use and occupy the same is not inconsistent with the terms and provisions of said will; and that said homestead cannot be sold, over her objections, under the terms of said will, except subject to her right to use and occupy the same during her lifetime."

In Watson v. Watson (Kan.) 189 Pac. 949, the court said:

"The restrictions of the Constitution and statutes touching the alienation of a homestead are for the protection of the family, and cannot be varied or avoided by an antenuptial contract providing that in case the wife survives the husband she is to have no part in his estate. Hence, so long as such surviving widow remains unmarried she may occupy the homestead, regardless of such contract."

Neither the antenuptial contract nor the will deprived the surviving spouse of the right to continue to possess and occupy the homestead as his home. The effect of said section 6328, supra, is, not that it makes the will void, but it postpones to a subsequent time the right of the devisee under the will to possess and occupy the homestead. The right accruing to the surviving spouse is not a life estate or any interest in the property. It is merely the right to continue to possess and occupy the premises as his home, and it may be terminated by any one of many different ways. There being no minor children, either the death of the husband or his abandonment of the homestead would terminate his rights. The superior court of Tulsa county correctly held that the husband had a right to continue to possess and occupy the homestead as his home.

The record shows that George E. Cole has died since this case was tried, and the question of his right to occupy the homestead in event he should remarry is not before us, and we are not expressing any opinion on that question.

The other questions discussed or referred to by plaintiff in error and defendant in error are immaterial in view of the conclusions we have reached. The authorities cited seem to have been based upon two or three different theories of this case. The statutes and authorities cited on the question of what constitutes a family or who is the head of a family, and that the homestead is not liable for the payment of debts, have no application in this case and it is not necessary to review them.

The judgment of the trial court is affirmed.

PITCHFORD, V. C. J., and JOHNSON, McNEILL, ELTING, KENNAMER, and NICHOLSON, JJ., concur.