Matter of the ESTATE of Fred L. COBB, Deceased.

No. 37179.

Supreme Court of Oklahoma.

Nov. 13, 1956.

Rehearing Denied Jan. 15, 1957.

Richard James, Stroud, Walter G. Wil-son, Chandler, for plaintiff in error.

P. D. Erwin, Chandler, Lloyd Hines and Gerald S. Tebbe, Oklahoma City, M. A.

Cox, Chandler, (Deceased) for defendant in error.

PER CURIAM.

This action began in the County Court of Lincoln County in the proceedings to administer the estate of Fred L. Cobb, deceased. Joseph E. Hugo, nephew of Fred L. Cobb, deceased, filed his petition for determination of heirs and distribution of the estate, alleging the existence of an antenuptial contract between the deceased and Hazel Cobb, surviving widow, which had been lost or intentionally destroyed, and praying that the estate of Fred L. Cobb, deceased, be distributed to him as the sole surviving heir. The county court found that such a contract had been entered into between Fred L. Cobb, deceased, and Hazel Cobb; that it was in existence on the date of decedent's death; that by its terms Hazel Cobb waived her right to participate in said estate; that Joseph E. Hugo was the sole surviving heir and entitled to inherit the estate to the exclusion of the surviving wife, Hazel Cobb. Thereupon Hazel Cobb appealed to the District Court of Lincoln County where trial de novo was had, resulting in a reversal of the County Court. This appeal is from a general judgment of the District Court in favor of Hazel Cobb, surviving widow, reversing the judgment of the County Court.

At the time of the trial de novo in the District Court there was then pending on appeal from the County Court two orders, one wherein the County Court had set aside the automobile of the decedent to Hazel Cobb, and one wherein the County Court had refused to cut off the widow's allowance. Both of these appeals were dismissed by the District Court and consolidated with the instant case for appeal to this court.

The undisputed evidence, as disclosed by the record, fairly establishes that Hazel Cobb and Fred L. Cobb, deceased, were married in August, 1947; that decedent was then a bachelor between 55 and 60 years of age and possessed of considerable real and personal property; that Hazel was then a widow, some few years younger, and possessed of 80 acres of land worth approximately $2,000, 7 head of cattle worth $175 and $600 in cash; that just prior to their marriage they went to the office of an attorney in Bristow, Oklahoma, where an antenuptial contract was there drafted and executed by them; that at that time and prior thereto Fred L. Cobb did not make known to Hazel the nature, extent and value of the property he then owned; that the contract entered into made no provision for Hazel nor was there any evidence tending to disclose the consideration, if any, made to Hazel for signing said contract; that Fred L. Cobb died intestate on July 9, 1952, leaving Hazel Cobb, his surviving wife and Joseph E. Hugo, his nephew, the son of a pre-deceased sister, and none other; that the contract was in existence on the date Fred L. Cobb died; that Fred L. Cobb's copy of the contract was delivered to Hazel as administratrix of the estate of Fred L. Cobb, deceased, and that she had either lost or intentionally destroyed the same.

Athough counsel in their briefs have discussed many questions, the conclusion we have reached renders it necessary to consider but one.

Our statute provides that the entire estate of a married man who dies intestate with a surviving wife and without issue, or father, or mother, or brother, or sister, descends to and becomes the property of the surviving wife. 84 O.S.1951 § 213, subd. 5.

And it is further provided by statute that if the decedent leave no issue, nor husband, nor wife, and no father or mother, or brother or sister, the estate must go to the next of kin in equal degree. 84 O.S.1951 § 213, subd. 6.

The appellant is a collateral heir of the deceased; he contends that, by virtue of the antenuptial agreement, the appellee waived her right to inherit the estate of Fred L. Cobb, deceased, and that he is therefore entitled to take the entire estate under 84 O.S.1951 § 213, subd. 6. The appellee is the surviving widow of the deceas-

ed, and contends that by reason of 84 O.S. 1951 § 213, subd. 5, she inherited the entire estate.

That the surviving widow of the deceased would take the entire estate in the absence of a valid antenuptial contract is not open to argument. It is equally plain that the nephew, a collateral heir, can inherit under the terms of the statute only in the event of a valid antenuptial contract in which the surviving widow has waived her right to inherit.

Assuming, without deciding, that the testimony of appellant (a large part of which was objected and excepted to) was admissible, the question before us is the validity or invalidity of the antenuptial contract.

Our statute, 84 O.S.1951 § 44, expressly authorizes antenuptial contracts. Such contracts between persons contemplating matrimony, determining the prospective rights of each in the property of both parties during and after marriage, are enforceable, and this court has upheld such contracts. See In re Rossiter's Estate, 191 Okl. 342, 129 P.2d 856; Leonard v. Prentice, 171 Okl. 522, 43 P.2d 776; In re Cole's Estate, 85 Okl. 69, 205 P. 172. However, in those cases provision was made for the surviving widow, and we held that they were fair and reasonable. We here state that a court of equity, when called upon to consider an antenuptial contract, should examine and construe the instrument in the light of the circumstances surrounding that particular case, and enforce or annul the agreement according to the facts before it. We do not believe that a rule of thumb can be laid down which would apply to all antenuptial agreements. Where, as here, it is apparent that no provision is made for the surviving widow, the agreement, if in existence, should receive the closest scrutiny; and where, as here, reliance is had upon a lost antenuptial contract, the evidence as to its existence and terms should be so clear as to eliminate misunderstanding.

The testimony of Wm. L. Cheatham was to the effect that he prepared the lost ante-nuptial contract; that it was just a regular form antenuptial contract in which each party waived his right to inherit in the property of the other party. Defendant in error admitted signing a contract in Mr. Cheatham's office, but testified that the substance of that contract was that she and the decedent were to each deal with their separate property during their lifetime as they saw fit without interference by the other.

A letter identified as being in the handwriting of the decedent, written on September 4, 1947 to Joseph E. Hugo, was introduced by plaintiff in error, the substance of which is as follows:

"Edwin: I made a marriage contract held ever thing but the home that is all she can get half of what we make this was made by attorney in Bristow his name is Wm. L. Cheatham don't say any thin about this to anyone keep this don't write to me about this or say a word to anyone."

Defendant in error contends that the validity of a release of the right of inheritance by a wife in an antenuptial agreement depends upon the presence of one of two factors: (1) a reasonable provision for her; or (2) a full and fair disclosure to her of his wealth. She argues that, where there is an entire absence of provision for the wife, or where the provision is unreasonably disproportionate to the then means of the intended husband, there is a presumption of designed concealment which imposes a burden on those alleging the validity of the agreement to show it was fairly made.

In Mann v. Mann, 135 Okl. 211, 275 P. 348, this court held:

"Where, in a suit for a divorce, a written property settlement is executed by husband and wife, and such settlement is later attacked by the wife on the ground of fraud and deception practiced upon her, and such settlement is apparently unfair on its face, equity raises a presumption against the validity thereof, and casts the burden upon the husband to prove good faith and

that no unfair advantage in procuring said settlement was taken."

■ 41 C.J.S., Husband and Wife, § 80, p. 554, provides as follows:

"To be valid, an antenuptial contract must be entered into freely, understandingly, and without fraud by persons legally competent to contract, and its provisions must be just and reasonable. The confidential relationship which generally, although not always, is deemed to exist between a prospective husband and wife requires the utmost good faith and a high degree of fairness."

■ A careful analysis of the law relating to antenuptial contracts in a majority of the jurisdictions leads us to the conclusion that where there is a complete absence of provision, or where the provision made for the intended wife is grossly disproportionate to the interest in the prospective husband's estate, which the intended wife would acquire by operation of law in case the marriage took place, the burden rests upon those claiming the validity of the contract to show that a full and fair disclosure was made to her of the extent and value of the property before she signed it, or that she was aware to all intents and purposes of the nature, character and value of the estate which she was relinquishing if the marriage took place.

The Supreme Court of Kansas in Watson v. Watson, 104 Kan. 578, 180 P. 242, 182 P. 643, laid down the following rule:

"An antenuptial contract must be upheld unless some fraud, deceit, or unreasonable inadequacy or disproportion appears. If the latter appear, the presumption of fraud is raised, and the burden is on the husband or those claiming under him to show that the wife was fully informed as to his property." In this connection see Murdock v. Murdock, 219 Ill. 213, 76 N.E. 57; Yarde v. Yarde, 187 Ill. 636, 58 N.E. 600; Davis v. Davis, 196 Ark. 57, 116 S.W.2d 607; Mathis v. Crane, 360 Mo. 631, 230 S.W.2d 707, 27 A.L.R.

2d 873; Kline v. Kline, 57 Pa. 120, 98 Am.Dec. 206; Pierce v. Pierce, 71 N. Y. 154, 27 Am.Rep. 22; Simpson v. Simpson's Ex'rs, 94 Ky. 586, 23 S.W. 361; Slingerland v. Slingerland, 115 Minn. 270, 132 N.W. 326; Rankin v. Schiereck, 166 Iowa 10, 147 N.W. 180; In re Warner's Estate, 207 Pa. 580, 57 A. 35; In re Estate of Enyart, 100 Neb. 337, 160 N.W. 120.

Under our statute, 84 O.S.1951 § 213, subd. 5, in the absence of a valid antenuptial contract the surviving spouse would take all of the estate of the other who died intestate. While the evidence is meager as to the exact value of the estate, the inventory in the administration proceedings shows an estate of more than $25,000 in value. There is no evidence showing any appreciable change in the estate between marriage and death.

There being no provision for the surviving widow in the contract it is certainly far different from that to which she would ordinarily be entitled under the law and leads us to the conclusion that, whether intentional or otherwise, it constituted a legal fraud upon her. We say this without any intention of charging the deceased with active or intentional fraud, although the letter relied on by plaintiff in error shows some intent on the part of decedent to conceal his assets. As shown by the authorities heretofore cited, the duty to make a fair disclosure of the amount, character and value of his property was an imperative one, cast by the law as a burden upon Fred L. Cobb, and the burden was upon his representative to show that he made such disclosure before the validity of the antenuptial agreement ran be established as a bar to the statutory right of the widow to take the estate.

It is argued by the plaintiff in error that the defendant in error, if not advised of the value of her prospective husband's estate, or if ignorant of its character, extent and value, was charged with the duty of ascertaining it and yet did nothing in respect thereto. We do not believe that this burden

was there; the burden was not upon her to inquire, but upon him to inform. ·

The district court found a general judgment in favor of the defendant in error. Whether it was that court's opinion that, the contract was not entered into in the circumstances required by law and was invalid, and therefore not a bar to her right of inheritance, or whether the evidence was insufficient to prove the existence and terms of a valid antenuptial contract we are unable to say. However, under the circumstances herein, the following rules of law apply. Where the testimony is oral and conflicting and the finding of the court is general such finding is a finding of every special thing necessary to be found to sustain the general finding and is conclusive upon this court upon all doubtful and disputed questions, of fact. Gillespie v. Dougherty, 179 Okl. 330, 65 P.2d 486. And, in a case of equitable cognizance presenting to the trial court a question of fact, a judgment based thereon will not be disturbed on review unless the finding of the trial court is clearly against the weight of the evidence. Wood v. Reed, 196 Okl. 498, 166 P.2d 85.

We believe the judgment of the district court is the proper one on the particular facts and the law of this case, and it is therefore affirmed.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner Jean R. Reed, and approved by Commissioners James H. Nease and J. W. Crawford, the cause was assigned to a Justice of the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, JACKSON and CARLILE, JJ., concur.

HALLEY, J., dissents.