27 P. 884 
1 Colo.App. 101
 COOPER v. WOOD et al. 
Court of Appeals of Colorado
October 12, 1891

 
 Error
 to Lake county court; WILLIAM R. HALL., Judge.
 
 
 H.D.
 Wood and others sued Isaac Cooper and C.H. Tibbetts as
 partners for a firm debt. Pending the suit, Cooper died, and
 his wife, Sarah F. Cooper, as administratrix, was
 substituted. Judgment for plaintiffs. Sarah N. Cooper
 appeals. Reversed.
 
 
 J.E.
 Havens and Bennett & Bennett, for plaintiff in error.
 
 
 C.S.
 Libby, for defendants in error.
 
 
 REED,
 J.
 
 
 If this
 were not a case affecting the estate of a deceased person,
 requiring a speedy termination, to enable a settlement of the
 estate at as early a date as practicable, we should be
 obliged to dismiss the suit, under the rules of the court,
 for want of a proper abstract. What purports to be an
 abstract contains nothing but a copy of the pleadings, and
 what counsel call a summary of the assignment of errors.
 Nearly every supposed error arose upon the admission and
 rejection of evidence, yet the abstract contains no evidence
 whatever upon the admission and rejection of which errors are
 assigned, and no reference to the folios or pages of the
 record [1 Colo.App. 102] where it can be found; but, under
 the circumstances of this particular case, the rule will be
 waived, hoping such irregularities will not again occur. The
 suit was brought by defendants in error (partners) against
 Isaac Cooper and C.H. Tibbetts, as partners, to recover the
 balance due upon goods alleged to have been sold to the
 defendants. Service was had upon Isaac Cooper, but none upon
 Tibbetts. The complaint is in the ordinary form, alleging a
 balance of $558 and interest to be due, and asking judgment.
 The answer of the defendant Cooper, after denying every
 allegation of the complaint generally, specifically denies
 the existence of the partnership of the defendants, and avers
 that in June, 1880, and before the debt sued for was
 contracted, he, the defendant, notified the plaintiffs that
 no partnership existed, and forbade any sale of goods to
 Tibbetts on his responsibility. It is also further averred in
 the answer that plaintiffs afterwards settled
 [27 P. 885] 
 with Tibbetts individually for the amount due, including the
 claim in this suit, and took the individual note of Tibbetts
 and a trust-deed upon real estate to secure the payment of
 the note; that the plaintiffs accepted and received the same
 in satisfaction of the original indebtedness of Tibbetts. In
 reply, plaintiffs reassert the partnership of defendants,
 admit the settlement made with Tibbetts, and the taking of
 his note and the deed of trust as security, but aver it to
 have been as collateral security only, and allege the
 nonpayment of the note, and a failure to realize anything
 upon the security. Previous to the trial, defendant Cooper
 died, and plaintiff in error, as administratrix, was
 substituted. It also appears from the record that during the
 trial counsel of defendants moved the court for leave to
 amend the answer by alleging that the individual note of
 Tibbetts was further secured by a chattel mortgage upon
 personal property, and leave to amend was denied by the
 court. Trial was had to the court without a jury,
 resulting--as near as it can be understood--in a judgment
 against the supposed firm of Cooper & Tibbetts [1 Colo.App.
 103] for the sum of $1,008.50, and judgment for like amount
 against the estate of Cooper, deceased. The existence of the
 partnership between the defendants having been directly and
 specifically put in issue, plaintiffs, in order to recover
 against the estate of Cooper, were obliged to establish it
 affirmatively. An attempt was made to establish it by
 secondary evidence, such as general reputation,
 circumstances, etc., but this class of loose, indefinite
 testimony of circumstances, common report and reputation
 "is not admissible, except in corroboration of previous
 testimony, unless it be to prove the fact that the
 partnership otherwise shown to exist was known to the
 plaintiff." 2 Greenl.Ev. Â§ 483. Numerous other
 authorities might be cited, but the proposition is so
 elementary and well understood it is unnecessary.
 
 
 Tibbetts,
 the supposed partner, was put upon the stand as a witness for
 the plaintiffs, and testified: "I lived in Bowman,
 Gunnison county, Colorado, in 1880 and 1881, and was engaged
 in merchandising. Had a partner in the business,--Isaac
 Cooper, now deceased." This was the only direct
 testimony to establish the partnership which was found by the
 court. This was error. The supposed partner was not competent
 as a witness to establish the partnership. Section 4816, c.
 132, Mills' Ann.St., is as follows: "That no party
 to any civil action, suit, or proceeding, or person directly
 interested in the event thereof, shall be allowed to testify
 therein, of his own motion, or in his own behalf, by virtue
 of the foregoing section, when any adverse party sues or
 defends as the trustee or conservator of an idiot, lunatic,
 or distracted person, or as the executor or administrator,
 heir, legatee, or devisee of any deceased person, or as
 guardian or trustee of any such heir, legatee, or devisee,
 unless when called as a witness by such adverse party so
 suing or defending." This is a copy of the statute of
 the state of Illinois. I can find no case in our own Reports
 where the exact question has been determined, but it has been
 adjudicated and construed in that state, and directly held
 that [1 Colo.App. 104] a surviving partner was incompetent,
 by reason of his interest. See Langley v. Dodsworth, 81 Ill.
 86; Hurlbut v. Meeker's Ex'x, 104 Ill. 541. The
 latter case is directly in point. It is said in the opinion,
 after quoting the statute: "Under this statute we are
 satisfied that neither J.D. Hurlbut nor D.N. Hurlbut was a
 competent witness for the plaintiff. They were not made
 defendants in the action, but were directly interested in the
 event of the suit. They were members of the firm of Hurlbut
 Bros. & Co. at the time the note was executed, and were
 makers of the note in suit, and hence had a direct interest
 in the result of the pending action." In the course of
 the examination of the witness Tibbetts the following
 occurred: "Question. State whether or not, of your own
 knowledge, the account sued upon in this action has been
 paid. Answer. Well, in my judgment, it has been paid. I gave
 the plaintiffs a promissory note, and also a chattel
 mortgage, to satisfy that account. It was my individual note.
 Have never received the note in return. Plaintiffs received
 payment of that note. They did not receive any money. I do
 say the plaintiffs realized the goods in the house which I
 gave them, in a chattel mortgage upon the goods in the
 Tibbetts House, to pay this account." At this stage of
 the proceedings leave was asked to amend the answer as above
 stated, and denied. The refusal to allow the amendment was an
 abuse of the discretion of the court, and may have worked
 great injustice to the defendant. Either the pleadings should
 have been allowed to have been amended, or, in proof of
 payment, all the transactions between Tibbetts and
 plaintiffs, and all facts of dealings in the way of payment
 or satisfaction, should have been elicited. This becomes more
 apparent in the subsequent testimony of Tibbetts, when called
 by defendant, and in the refusal of the court to allow the
 witness to testify to certain facts offered in proof, which,
 if established, would of necessity have shown, if not full,
 at least partial, payment by the witness. He stated that in
 payment of his individual note at its maturity [1 Colo.App.
 105] he turned over to plaintiffs the personal property
 covered by the chattel mortgage; that plaintiffs took
 possession and charge of it; no portion was ever returned to
 him; and that it was used by plaintiffs in the Tibbetts
 House, at Aspen. He was then asked the value of the property.
 Objection was made and sustained. Defendants also attempted
 to prove by the witness that the witness was misled by one of
 the plaintiffs at the time the real property was sold under
 the trust-deed; that plaintiff informed him that he would
 protect his interests, and that it was unnecessary for him to
 attend the sale; that he remained away, and the property was
 bid in for a nominal sum, far below its value, etc.; but was
 not allowed to make the proof. How far the defendant might
 have been successful in establishing the facts contained in
 his offers of proof of
 [27 P. 886.] 
 course cannot be known, but the opportunity should have been
 allowed him. It is unnecessary to follow this subject
 further. The whole matter should have been investigated.
 
 
 In
 defending suits of this character estates are at great
 disadvantage, and, to a great extent, at the mercy of
 claimants. The actor in the transactions, who did the
 business, and knew all the facts and details, being dead, the
 representative of the estate, having no knowledge only that
 subsequently gained, cannot, in the first instance, in all
 cases interpose all necessary defense, and courts should, in
 the interest of justice, and for the protection of widows and
 children, afford every reasonable facility for the full
 investigation of every asserted claim. Such facilities were
 not given, nor such protection, to the estate upon the trial
 of this cause.
 
 
 Another
 important question, which, as far as I can ascertain, has not
 been determined in this court, is presented in this case,
 viz., whether, under any circumstances, after the dissolution
 of the partnership, the admissions or acknowledgments of a
 former partner are admissible to establish a cause of action
 against a former partner. In England, the rule for years was
 well settled that such admissions are competent, not only to
 take the case out of the statute of limitations, [1 Colo.App.
 106] but to establish or create a firm indebtedness. It was
 based upon the opinion of Lord MANSFIELD in Whitcomb v.
 Whiting, 2 Doug. 652, and what Judge Story (Story, Partn. Â§
 323) did not hesitate to call "an unreasoned
 decision." The case has been severely criticised in the
 English courts. See opinion of Lord KENYON in Clarke v.
 Bradshaw, 3 Esp. 155; of Lord ELLENBOROUGH in Brandram v.
 Wharton, 1 Barn. & Ald. 463; and Lord TENTERDEN in Atkins v.
 Tredgold, 2 Barn. & C. 23; and the doctrine has been limited
 and partially overturned by late acts of parliament. In the
 United States, considerable diversity of opinion is expressed
 in the different courts, some few states adhering to and
 following the old English decisions; but in federal courts
 the English doctrine has been overruled, and the admissions
 held inadmissible, first in the case of Clementson v.
 Williams, 8 Cranch, 72, followed by Judge STORY in Bell v.
 Morrison, 1 Pet. 373. In Bispham v. Patterson, 2 McLean, 87,
 the learned judge, after reviewing the authorities, expressed
 his conviction in favor of the English rule, but yielded to
 American precedents, and decided the case in harmony with
 them. The American rule, overruling early English decisions,
 has since been followed in those courts. See Thompson v.
 Bowman, 6 Wall. 316. In a great majority of state courts the
 English doctrine has been overruled; first, in the state of
 New York, and followed by at least 20 other state courts. In
 New York the English rule was repudiated as early as Walden
 v. Sherburne, 15 Johns. 409, which has been since followed in
 Van Keuren v. Parmelee, 2 N.Y. 523, in which the decisions of
 the different states are carefully and ably reviewed in the
 court of appeals, resulting again in overruling the English
 doctrine. The principal authorities on the subject will be
 found collected in 3 Kent, Comm. 49-51. The power of an
 individual partner to bind the firm during its existence
 arises only from the fact that each is the agent of the firm,
 and "it seems difficult upon principle to perceive how
 they can be any more than the declarations or [1 Colo.App.
 107] acts or acknowledgments of any other agent of the
 partnership would be after his agency has ceased."
 Story, Partn. Â§ 323; and see Ellicott v. Nichols, 7 Gill, 85;
 Thompson v. Bowman, 6 Wall. 316. There is certainly great
 authority, as well as reason, for adopting the American rule.
 In this case, not only was the partnership dissolved, but the
 party to be charged was dead; "but, however the doctrine
 may be after a dissolution in cases where all the partners
 are living, it is very clear that no acknowledgment by the
 surviving partners after the death of one of them will revive
 the debt against the estate of the deceased partner,"
 (Story, Partn. Â§ 324a;) and this seems also to be the English
 as well as American rule. See Atkins v. Tredgold, 2 Barn. &
 C. 23; Slater v. Lawson, 1 Barn. & Adol. 396; Crallan v.
 Oulton, 3 Beav. 1; Way v. Bassett, 5 Hare, 67. In this case,
 not only was the party whose estate is sought to be charged
 dead, but the claim in suit, prior to his death, had been
 assumed as the individual debt of Tibbetts and his individual
 note and security taken in supposed extinguishment of any
 partnership liability; yet the witness was allowed to testify
 not only that the debt was originally a firm debt, but that
 it remained so notwithstanding the fact that previous to the
 death of Cooper it had apparently been regarded by all
 concerned as the debt of Tibbetts alone. Certainly, if in any
 case a rule of law will close the mouth of a surviving
 partner, it should be applied in this, where not only the
 direct interest of the witness, but the rule of law, relieves
 the estate from the effects of such directly interested
 testimony. We have no hesitancy in saying that the admissions
 and statements of Tibbetts, calculated to charge the estate,
 were incompetent, and should have been excluded. The judgment
 should be reversed, and the cause remanded for a new trial.