**NATIONAL INTERSTATE LIFE INSURANCE COMPANY, a Corporation, and Oklahoma State Bank of Konawa, Oklahoma, a State Banking Associate, Appellants,**

**v.**

**Hugh Vernon THOMAS and Royce Thomas, Co-Administrators of the Estate of Hugh Max Thomas, Deceased, Appellees.**

**No. 52033.**

Supreme Court of Oklahoma.

June 16, 1981.

---

Gary E. Payne, Atoka, for appellants.

John B. Axton and Bill Moore, Coalgate, for appellees.

DOOLIN, Justice:

Was a credit life insurance policy automatically renewed when the bank note it protected was renewed by the parties, even though no payment designated as "premium" was paid? We answer in the negative.

Hugh Max Thomas (Thomas) negotiated a single payment note from Oklahoma State Bank of Konawa (Bank) on January 22, 1975, due in six months. A credit term life insurance policy was issued to cover the note with the premium loaned by Bank and added to the note principal. The loan amount was $21,000.00 with $178.50 added for the premium to make the note's face amount $21,178.50.

On July 24, 1975, Thomas paid the Bank $2,059.00 which was credited as $1,059.00 interest and $1,000.00 as payment on principal and renewed the note. On July 25, 1975, bank president James Kirkpatrick (Kirkpatrick) sent Thomas a letter which said, "We did not collect the premium on the Credit Life Insurance when you paid the interest. If you want to keep this insurance on your note, you will need to send us a check for $178.50."

Within a few days of the letter Thomas called Kirkpatrick and said he definitely wanted to keep the insurance, and Kirkpatrick iterated Thomas must send his check for the $178.50 premium.

The premium check was never received. Thomas died August 7, 1975.

The insurance company refused to pay the insurance proceeds to Thomas' estate on grounds there was no contract in existence when Thomas died. The estate sued and won a judgment at trial. Bank and the insurance company appeal.

In ruling for the estate, the trial court made the following findings:

—The original certificate of insurance was still in full force and effect by reason of the renewal, extension or deferral of the original note;

—The defendants (Bank and insurance company hereafter referred to as Bank) were estopped from denying the validity of the insurance policy based upon the acts or failure to act of the insurer's agent (Bank);

—Defendants failed to set up any defense as to the claim of the plaintiff;

—The plaintiff had been damaged in the amount of $21,000.00.

The trial court awarded the estate $21,000.00 in damages and attorney fees of $3,150.00.

I

Bank's main argument in error rests with the trial court's finding that the credit life insurance policy was in full force and effect because the original agreement for note and insurance had been extended by agreement of the parties.

The estate says the original note amount included the $178.50 premium and argues that what occurred on July 24, 1975 was a refinancing of the original term and condition of the entire loan transaction, including the credit life insurance policy. It further argues the $2,059.00 paid July 24th was to cover the interest, partial payment on principal *and* insurance premium. The only documentary evidence of the July 24th transaction is the back of the original note which has lines drawn for recording payment information. It shows that after the interest was deducted, the remaining money ($1,000.00) went to reduce the principal amount. There is absolutely no evidence Thomas intended for part of that $1,000.00 to be used for premium payment, and no evidence he protested disposition of allocation of his $2,059.00 to interest and principal only.

■ While the original note term was for only six months, it was extended by agreement of the parties without a new disclosure statement. This action, coupled with Kirkpatrick's testimony, would identify the procédure as a "renewed" note, not a new or refinanced note. Apparently there were no new instruments or disclosure statements drawn to indicate the note extension, and none are required for a renewed note.[1]

1. Regulation Z, Section 226.811, adopted as Rules of the Oklahoma Department of Consumer Affairs as a part of the UCCC, deals with renewal of notes. It provides no new disclo-

sure statement need be made on a renewal for the same term and at the same annual percentage rate, and further provided the amount of the renewal does not exceed the amount of the

■ The estate seeks relief by arguing the loan in question should be identified with, and come under the guidelines and requirements of, the Uniform Consumer Credit Code-Loans (14A O.S.1971 § 3–101 et seq.) and thereby under its regulation of consumer credit insurance (§ 4–103 et seq.). It is therefore the estate's burden to bring this action under the Code. The prerequisite for Code application is found at § 3–104: the lendor must be regularly engaged in the business of making loans; the debtor must be a person; the debt must be incurred primarily for a personal, family, household or agriculture purpose; the debt must be payable in installments or a loan finance charge made; and the principal must either not exceed $25,000.00 or be secured by an interest in land.

We have difficulty with proof of the third criteria: personal, family, household or agriculture purpose. Kirkpatrick testified the loan was "commercial" in nature and that Thomas purchased 24 acres of land at auction for *re-sale* purposes. He testified Thomas called him shortly before the due date of the loan and said he had been unable to sell the land, and asked if the loan could be extended because he felt sure he could sell it within a few months.

Thomas' son testified his father lived on the land in a mobile home and raised cattle and horses.

We note the son's explanation is not necessarily inconsistent with Kirkpatrick's testimony, and hold that the estate did not meet its burden of proving the loan was incurred for a personal, family, household or agriculture purpose. Therefore the Uniform Consumer Credit Code is not applicable.

Assuming arguendo the transaction did fall under the UCCC, the specific sections called to our attention by the estate do not help its cause:

■ (a) Section 4–110 states a creditor may NOT receive a separate charge for credit insurance upon refinancing a loan unless the debtor agrees *at or before* refinancing that the charge may be made. This is a renewed note, not a refinanced note, as pointed out above.

■ (b) Section 4–201(3) requires the term of credit life insurance not to extend more than 15 days beyond the originally scheduled due date, unless extended without cost or as an incident to refinancing. The section does not *require* an extension of 15 days beyond due date, only that it *may not extend* beyond 15 days unless certain preconditions have been fulfilled.

■ (c) Section 4–105 says *if the creditor agrees* to provide credit insurance he shall send a copy of the policy to the debtor within 30 days or notify the debtor of any delay or failure in providing such insurance. The creditor here did agree to provide a second term of insurance but only if the premium was paid. When no premium was paid, there was no obligation to provide insurance.

■ As further argument estate notes 36 O.S. 1971 § 4003 requires that all policies of life insurance contain provision for a 30-day grace period during which the payment of any premium *after the first* may be made. As Thomas died within 30 days from the premium due date, the estate argues it should be entitled to the insurance proceeds.

We are not impressed. Section 4002(B) of Title 36 does not require a grace period granted by § 4003 to be incorporated in a single premium policy.[2] Neither did the note or the credit life insurance policy contain any provision for extension of either instrument. The insurance policy was, in

unpaid balance plus any accrued and unpaid financing charge. A reduction in principal will not by itself require new disclosure. See Interpretive Letter No. 276 which concludes: "... only where there is also an increase in the annual percentage rate or other change in terms which would make the general exemption from disclosure on renewals inapplicable."

In the case at bar the note was extended under the identical annual percentage rate, for the identical term, and the principal did not exceed the original principal. Therefore no new disclosure statement was mandated.

2. Cf. *Bowling v. Aetna Life Ins. Co.*, 176 Okl. 405, 55 P.2d 1023 (1936).

fact, for a specific six-month period, commencing January 22nd. Therefore the policy could not be extended upon payment of a "second" premium; a "new" policy would have to be written to cover a new term. Section 4003 should not apply in this case.

 Estate next argues Oklahoma general insurance law to support its case, specifically 36 O.S. 1971 § 3623. Section 3623 provides an insurance policy may be renewed or extended "at the option of the insurer." Here the insurer required payment of the premium prior to issuance of the policy, and when the premium was not paid, the option was not met.

## II

We view this action as one of contract. Parties admit there was no *new* insurance policy in effect when the insured died; however, the estate argued, and the trial court found, that the original insurance policy was extended when the note was extended, even though the premium was never paid.

We cannot accept this conclusion.

The original insurance policy ran for a specific six-month term expiring July 22, 1975. There is simply no evidence the parties intended for the original policy to carry over into the renewal of the note without payment of the premium. Thomas received both written and oral notice regarding the need to pay the premium in order to have a new policy issued. There is likewise no evidence Thomas intended for part of the $1,000.00 principal payment to serve as the insurance premium. In fact, just the opposite is true.

 It is axiomatic that parties to an existing valid contract may, by mutual consent and consideration, modify the contract.[3]

 In this case we have a mutual agreement to renew the note with payment of the interest being the consideration. How-

ever there is no proof of mutual consent to renew the credit life insurance policy; the Bank's "consent" was conditioned upon payment of the premium, and when it was never received, a new policy never came into existence.

In brief we find no evidence to support the trial court's findings, and so we reverse.

REVERSED.

IRWIN, C. J., BARNES, V. C. J., REYNOLDS and WILSON, Special Justices, and OPALA, J., concur.

SIMMS, J., concurs in result.

HODGES and LAVENDER, JJ., dissent.

WILLIAMS, J., excused from participation; HARGRAVE, J., disqualified. The Honorable LESTER A. REYNOLDS and CHARLES M. WILSON were appointed Special Justices.

---

**3.** *Watt Plumbing, Air Conditioning and Electric Inc. v. Tulsa Rig, Reel & Manufacturing Company,* 533 P.2d 980 (Okl.1975).