Robert R. TAYLOR, Appellee,

v.

Carla Jean TAYLOR, Appellant.

No. 75170.

Court of Appeals of Oklahoma,
Division No. 1.

Dec. 10, 1991.

Rehearing Denied Feb. 3, 1992.

Certiorari Dismissed June 30, 1992.

William F. Raynolds, II, Tulsa, for appellant.

David W. Phillips and Cynthia A. Phillips, Sand Springs, for appellee.

BAILEY, Judge:

Appellant Carla Jean Taylor (Wife) seeks review of the Trial Court's order enforcing an antenuptial agreement between Wife and Appellee Robert R. Taylor (Husband). Herein, Wife challenges the validity of the antenuptial agreement, arguing (1) that she signed same under duress, and (2) that Husband failed to make full disclosure of the nature and extent of his assets prior to execution.

Husband was a person of property, Wife was not. Husband and Wife entered into the antenuptial agreement in 1978, and married in December of that year. The antenuptial agreement essentially provided that property brought into the marriage by each party retained its separate character, that Wife would receive no alimony in the event of divorce, that earnings and accumulations acquired by the joint efforts of the parties during the marriage would be owned in common, and that each party would pay his/her own attorney fees.

Ten years later, Husband petitioned for divorce. Wife answered, requesting alimony, attorney fees, and a division of marital property. The Trial Court found the antenuptial agreement valid and enforceable, and denied Wife's claims for support alimony, attorney fees, and division of property. Wife now appeals as aforesaid.

■ Antenuptial agreements by which a couple may alter the incidents of marriage which might otherwise attach are recognized in Oklahoma by both statute and case law.[1] However, in considering the validity of antenuptial agreements, certain tests peculiar thereto apply:

1. Is fair and reasonable provision made for the party opposing the contract?
2. If not, was a full, fair and frank disclosure of the other spouse's worth made before execution of the contract?
3. If neither of the above, did the party opposing the contract in fact have a generally accurate knowledge of the other's worth?

*Matter of Estate of Burgess*, 646 P.2d 623, 626 (Okl.App.1982).[2]

■ In the instant case, we cannot say the antenuptial agreement made fair and reasonable provision for Wife; in fact, the agreement makes no provision for Wife whatsoever. The record indicates Wife brought little or no property to the marriage, while Husband brought a net estate worth approximately $150,000.00. Both parties worked during the ten year marriage, and each contributed time, money and effort thereto. However, upon divorce, Wife received only the equivalent of what little personal property she brought to the marriage: about $1200.00 (representing the value of certain improvements to Husband's home in which the parties lived and for which improvements Wife paid), and a small amount of money Wife saved during the marriage.[3] On the other hand, Husband received all other property, a net estate which had nearly doubled in value during the marriage.

However, inadequacy of provision for Wife does not, in and of itself, vitiate an antenuptial agreement.[4] As noted, if, at the time of execution of the antenuptial agreement, Wife received a full disclosure of Husband's assets, or had a generally accurate knowledge of Husband's worth, Wife will be bound by the terms of the

---

1. See, *Matter of Estate of Burgess*, 646 P.2d 623, 625 (Okl.App.1982); *Freeman v. Freeman*, 565 P.2d 365 (Okl.1977); *Talley v. Harris*, 199 Okl. 47, 182 P.2d 765 (1947); *In re Cole's Estate* 85 Okl. 69, 205 P. 172 (1992).
   Section 204 of Title 43, Oklahoma Statutes (Supp.1989) (renumbered from 32 O.S.1981 § 5) also provides in pertinent part:
   Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, subject, in transactions between themselves, to the general rules which control the actions of persons

occupying confidential relations with each other....

2. See also, "Husband and Wife: Drafting an Antenuptial Contract in Oklahoma", 32 Okl. L.Rev. 220 (1979).

3. Wife testified below that virtually all the money she saved through the ten year marriage had been used to pay attorney fees.

4. See, *Burgess*, 646 P.2d at 627, citing *Del Vecchio v. Del Vecchio*, 143 So.2d 17 (Fla.1962).

agreement.[5] As the record herein reveals, Wife knew (prior to the marriage) that Husband owned a cattle business, real property, a service station, and stocks. Wife assisted Husband in business and personal matters prior to the marriage, and was conversant with general business practices, having worked over the years in a variety of business related positions. Under these circumstances, we cannot say Wife lacked sufficient awareness of the nature and extent, generally or specifically, of Husband's assets at the time of execution of the antenuptial agreement so as to render the terms thereof unenforceable under *Burgess*.

■ Neither do we accept Wife's assertion that she signed the antenuptial agreement under duress. Wife bears the burden of proof of such claim by satisfactory testimony.[6] In support of this contention, Wife relies on her testimony adduced below that Husband refused to marry Wife if Wife failed to sign the agreement which, according to Wife, would have resulted in Wife being turned out on the street, homeless and without means.

However, the evidence also reveals Wife was in the possession of the agreement for some three months prior to signing thereof, and that she otherwise executed the agreement freely and voluntarily. Further, both parties had been previously married, and Wife was well aware of Husband's bitter (and apparently expensive) recent divorce and his attendant fear of repeating that experience.[7] Under these facts, we cannot say the Trial Court erred in finding Wife failed to satisfactorily demonstrate the claimed duress.

■ Therefore, and insofar as the antenuptial agreement appears otherwise valid and enforceable under *Burgess*, we find no error in the Trial Court's refusal to award Wife alimony, attorney fees or a division of Husband's separate property in accordance with the agreement. However, and insofar as the Trial Court construed the agreement to proscribe division and distribution of property accumulated by the joint industry of the parties during the marriage, we find the Trial Court erred.

In that regard, Title 12 O.S.1981 § 1278 (now 43 O.S.Supp.1989 § 121) specifically mandates equitable division of property jointly acquired by the parties during coverture regardless of which party retains title thereto. We read § 1278 (and consequently 43 O.S. § 121) as establishing a just and proper public policy directing that upon divorce, the fruits of the joint efforts of the parties to the marriage be equitably divided between the contributors, and contracts in derogation of this public policy as expressed by our Legislature are not entitled to enforcement.[8] Thus, insofar as the antenuptial agreement purports to divest Wife of a share of increased value of the marital estate attributable to the joint efforts of the parties, we hold the agreement unenforceable.

In the present case, and contrary to this public policy, the record indicates that the Trial Court apparently construed the agreement to proscribe Wife's participation in *any* of the accumulated increase in the value of the estate attributable to the joint industry of the parties, including monies contributed by Wife to the joint estate which may have increased the net worth of Husband's separate property. In that re-

---

**5.** *Burgess,* 646 P.2d at 626.

**6.** See, *Leonard v. Prentice,* 171 Okl. 522, 43 P.2d 776, 778 (1935) ("burden [rests] upon [Wife] to prove by satisfactory testimony her claim that [antenuptial agreement] was procured by fraud or duress"). But see, *Burgess,* 646 P.2d at 626 ("antenuptial contracts can be avoided by a showing of fraud, duress, coercion, overreaching, and the like ... [but] fraud is never presumed, and the party attacking the contract's validity must prove [fraud by] ... 'clear and convincing' evidence.")

**7.** Cf., *Freeman,* 565 P.2d at 367 ("[E]ach of the parties had undergone previous divorces and desired to forestall ... problems should divorce be sought in the future.")

**8.** See, e.g., *Dycus v. Belco Industries, Inc.,* 569 P.2d 553 (Okl.App.1977) (contracts in derogation of statutes will not be enforced); *Stanolind Oil & Gas Co. v. Phillips,* 195 Okl. 377, 157 P.2d 751 (1945) (contract designed to allow violation of statute void as contrary to public policy).

gard, the record demonstrates Husband's net estate enjoyed a 100% increase in value during the marriage, with approximately one-half thereof attributable to the increase in value of the homestead. The record further reflects Wife worked during the marriage, nursed Husband during an illness, periodically loaned and/or gave Husband sums of money, maintained and refurbished the home, effected repairs thereon, and was periodically involved in assisting Husband in business matters, all of which arguably enhanced the value of Husband's separate property, and to which enhancement Wife is entitled to an equitable share.[9] We therefore find the Trial Court erred in refusing Wife a share of the enhanced value of the estate attributable to the joint efforts of the parties consistent with the public policy of this state as we have previously determined.

That part of the Trial Court's order adjudging the subject antenuptial agreement valid and enforceable and denying Wife alimony, attorney fees and division of Husband's separate property is AFFIRMED. That part of the Trial Court's order refusing Wife a share of increased value of the marital estate attributable to the joint efforts of the parties is REVERSED, and the cause REMANDED to the Trial Court for further proceedings not inconsistent with this opinion.

GARRETT, P.J., and ADAMS, J., concur.

---

9. See, e.g., *May v. May*, 596 P.2d 536, 539 (Okl. 1979) (held, any measurable increase in value of property which may be attributable to efforts of labor expended through services, including doing minor repairs and improvement or in performing day-to-day chores, is reachable as a joint spousal interest for division between the parties on the basis of an equitable share, following the established rule that enhancement in value of separate estate of one spouse, attributable to personal efforts or labor by the other, constitutes jointly acquired property subject to division.)