**Judy Marie BOYER, Appellee,**

v.

**Glenn R. BOYER, Appellant.**

No. 85671.

Court of Appeals of Oklahoma,
Division No. 4.

Aug. 6, 1996.

Earl B. Mitchell, Jr., Mitchell & DeClerck, P.C. Enid, for Appellee.

Kevin J. Calvey, Kevin J. Calvey, P.C., Oklahoma City, for Appellant.

## SUMMARY OPINION

RAPP, Chief Judge.

Trial court defendant, Glenn Boyer, appeals a divorce property division order entered by the trial court in this action brought by plaintiff, Judy Boyer. The defendant alleges the trial court did not enforce a post-nuptial modification of the parties' antenuptial contract.[1]

## BACKGROUND

The parties were married in September 1989. They entered into an antenuptial agreement prior to their marriage. The agreement provided, among other things, that each would retain sole ownership of all real and personal property owned prior to marriage, and that any increase in value of the separate property would remain separate. The agreement fully disclosed each party's respective property.

After marriage, they lived in the wife's residential property. They decided to make improvements on the wife's residence using the husband's separate funds. Prior to expending funds, they entered into an agreement modifying the antenuptial agreement on March 15, 1991, "to the extent that Glenn shall receive a proportionate interest in Judy's separate property, based on the amount of [Glenn's] investment." The husband's interest in the real property was to be calculated as a percentage "based upon the amount of his investment as compared to the May 15, 1990 appraised value of the property of $127,000.00."[2]

He did make some expenditures for the residence. He also began operating his business in it, stored merchandise there, and paid the wife no rent. She filed for a divorce on December 29, 1994.

The court granted the divorce and found that the parties had entered into a valid antenuptial agreement. It also, in its finding of fact no. 4 determined that "an antenuptial agreement could not be modified during the marriage." The court then awarded each party their respective property as shown on the antenuptial agreement. However, with respect to the wife's residential realty, the court awarded the husband a lien on the wife's residence in recognition of monetary expenditures made by him for improvements.

The trial court determined that the value of the residence at the time of marriage in September 1989 was $127,000, which was the sum agreed to by the parties. It also found that without improvements, in accord with

---

1. Appellant's additional propositions were not supported by authority and are thus waived. *See Keel v. MFA Mutual Ins. Co.*, 553 P.2d 160 (Okla. 1976).

2. The term "investment" was defined to include "any improvements to the real property, furniture, carpet, wall paper, paint, insurance on personal property which is kept at the residence, such as jewelry, china and silver, and any payment made on the principal mortgage or second mortgage."

the testimony of the husband's expert, it would have appreciated by a minimum of 20% to a value of $152,400 by the time of divorce in May 1995. It then determined that the residence's value, with the husband's improvements, was $175,000 in May 1995. The wife's evidence was that he had expended only $14,407 on improvements. He claimed expenditures of $32,283 on the home and $21,989 on the yard. The trial court ordered that on the sale of the residence, the wife would receive $152,400, and the husband would receive the greater amount of $22,600 or the gross amount that the property sells for above $152,400. The sum was to be paid on the day of closing or May 1, 1996, whichever came first.

## ALLEGED ERROR

The husband appeals asserting the trial court erred in ruling the antenuptial agreement could not be modified post-nuptially and in refusing to enforce the modification agreement.

## ANTENUPTIAL AGREEMENT

We first note the trial court correctly found that the original antenuptial agreement was valid.

## POSTNUPTIAL MODIFICATION OF ANTENUPTIAL AGREEMENT

The trial court appeared to err in its finding of fact holding an antenuptial contract cannot be modified postnuptially. However, it did recognize the modification and incorporated it in its final judgment.

■ Although there are no Oklahoma cases directly on point, the language of 43 O.S.1991, § 204, which modifies the common law rule, is relevant and provides:

Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried,

subject, in transaction between themselves, to the general rules which control the actions of persons occupying confidential relations with each other as defined by the title on trusts.

Based on this statute, the Oklahoma Supreme Court stated, in *Manhart v. Manhart*, 725 P.2d 1234, 1239 (Okla.1986), that spouses may contract with each other and alter their legal relations as to property.[3] The court further stated that in altering their spousal relations concerning property, one spouse may convey a property interest to the other spouse, or even remove jointly acquired property subject to equitable division from the marital estate. *Id.* (citations omitted).

■ As a cautionary note, it must be remembered that "In any agreement affecting the property rights between spouses, there is a relation of special confidence and trust, requiring that the dealings with each other be conducted in utmost good faith and frankness." *Id.* Thus, "[w]here one spouse, through coercion or fraudulent transactions, gains an unjust advantage, the courts will set aside the agreement." *Id.* (citing *Mann v. Mann*, 135 Okla. 211, 275 P. 348 (1929); *Wooden v. Wooden*, 113 Okla. 81, 239 P. 231 (1925)).

■ The *Manhart* court therefore concluded that an agreement affecting the property rights between spouses is enforceable, including one which removes property from the marital estate, "if it is just and equitable." *Id.* (citation omitted). In determining whether an agreement is just and equitable, the court must look beyond the terms of the agreement, and consider the relationship of the parties at the time of the contract, including their "ages, health, financial conditions, opportunities, and contribution of each to joint estate." *Seelig v. Seelig*, 460 P.2d 433, 436 (Okla.1969).

---

**3.** On the other hand, there are limitations on the scope of permissible matters to be included in marital contracts. In this regard, 43 O.S.1991, § 205 provides, "A husband and wife cannot, by any contract with each other, alter their legal relations, *except as to property,* and except that they may agree in writing to an immediate sepa-

ration, and may make provision for the support of either of them and of their children during such separation." Thus, specific matters controlled by statute, such as obligations of mutual respect, fidelity and support, are not within the proper scope of an antenuptial contract. *See* 43 O.S.1991, § 201.

In addition to section 204 and the language of *Manhart*, it is clear in Oklahoma that parties to an existing valid contract may by mutual consent and consideration modify the contract. *National Interstate Life Ins. Co. v. Thomas*, 630 P.2d 779 (Okla.1981). Thus, under general contract law in Oklahoma, it can be here concluded and held that an antenuptial contract may be modified postnuptially by the parties.

Moreover, it must also be remembered that under general contract law, if a contract is made for the benefit of a third person, a modification by the principal parties alone is ineffective to extinguish the third person's equitable interest created by the contract. *See Christian v. Metropolitan Life Ins. Co.*, 566 P.2d 445 (Okla.1977). Thus, in *Dean v. Jelsma*, 316 P.2d 599 (Okla. 1957) *overruled on other grounds, Davis v. Davis*, 536 P.2d 915 (Okla.1975), the court held that a rescission of an antenuptial contract by a husband and wife alone was ineffective to extinguish the husband's daughter's equitable interest that was created by the contract. *Dean* also clearly recognized the possibility of the rescission or revocation of an antenuptial contract. *See also Senter v. Senter*, 420 P.2d 879 (Okla.1966). Thus, if postnuptial rescission, revocation or repudiation of an antenuptial agreement is permissible in Oklahoma, it follows that a postnuptial modification of a property provision is also permissible.

Additional support for the enforceability of postnuptial modifications of valid antenuptial agreements may be found in other states, which hold to the general rule that parties may modify or rescind an antenuptial contract during marriage if both freely consent. *See e.g., Turner v. Black*, 19 Ill.2d 296, 166 N.E.2d 588 (1960); *O'Dell v. O'Dell*, 238 Iowa 434, 26 N.W.2d 401 (1947); *Turner v. Turner*, 242 N.C. 533, 89 S.E.2d 245 (1955); *see generally* 3 A. Lindey & L. Parley, *Lindey On Separation Agreements and Antenuptial Contracts*, 90–1 (1989).

Finally, antenuptial agreements are favored by the law because they tend to promote domestic happiness. *See Leonard v. Prentice*, 171 Okla. 522, 43 P.2d 776 (1935). In much the same way, the postnuptial modi-

fications promote harmony by allowing couples to provide for changes in circumstances during the course of the marriage. Otherwise, couples could be trapped by their original agreement despite unexpected upheavals in fortune.

Thus, we here conclude that in Oklahoma, a valid antenuptial agreement may·be modified postnuptially with respect to property provisions where the modification is fairly entered into, the intentions of the parties are clearly expressed, the agreement itself is fair, and it does not contravene public policy. Since the relationship of the parties to a postnuptial agreement is one of mutual trust, and the parties do not deal at arm's length, a higher degree of good faith and candor is required. *See Leonard*, 171 Okla. at 526, 43 P.2d at 780 (1935) (good faith required in antenuptial agreement).

Having concluded that antenuptial agreement modifications can be made postnuptially, it appears the trial court recognized the validity of the modification after initially finding such modification to be invalid, prior to entering its final judgment. It did so by granting the husband a lien upon the wife's residential property for monies expended therein for improvements which would not have been permitted under the strict interpretation of the original agreement, which provided that increases in value of separate property would remain separate property. Thus, the husband's allegations of error advanced on this point are without merit.

The trial court's decision is affirmed.

TAYLOR, P.J., concurs, and REIF, J., concurs specially.

REIF, Judge, specially concurring

I fully concur with the majority opinion and write specially only to point out that this is a case of the trial court reaching the correct conclusion despite making an incorrect ruling in doing so. The modification of the antenuptial agreement was valid and supported the granting of lien to Husband for his "investment" in Wife's property. Even though the lien is equitable in nature, it is

not simply grounded in equity, but has a contractual basis that should have been recognized.