2014 OK CIV APP 100

**In re the MARRIAGE OF Mary Sue STARCEVICH and John P. Starcevich:**

**Mary Sue Starcevich, Petitioner/Appellee/Counter–Appellant,**

**v.**

**John P. Starcevich, Respondent/Appellant/Counter–Appellee.**

No. 111,085.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 19, 2014.

Certiorari Denied Dec. 8, 2014.

---

Virginia Henson, Jama Pecore, Petersen, Henson, Meadows, Pecore & Peot, P.C., Norman, Oklahoma, for Petitioner/Appellee/Counter–Appellant.

Laura McConnell–Corbyn, Michael L. Brooks, Hartzog, Conger, Cason & Neville, P.L.L.P., Oklahoma City, Oklahoma, for Respondent/Appellant/Counter–Appellee.

ROBERT D. BELL, Presiding Judge.

¶1 In this dissolution of marriage proceeding, Respondent/Appellant/Counter–Appellee, John P. Starcevich (Husband), appeals from the trial court's decree invalidating a portion of a 1978 antenuptial agreement wherein Petitioner/Appellee/ Counter–Appellant, Mary Sue Starcevich (Wife), waived her right to an equitable division of marital property maintained in Husband's name. Husband also contends the court erred in awarding Wife attorney fees. Wife counter-appeals the portion of the decree validating the remainder of the antenuptial agreement. Wife also claims the trial court should have awarded her an equitable share of the enhanced value of Husband's dental practice. We affirm in part, reverse in part and remand for further proceedings.

¶2 The parties were married August 5, 1978, and remained married for thirty two (32) years. The parties have four grown children. In 1978, Husband, then 27 years old, had recently acquired a dental practice from a bankruptcy estate for $14,000.00. Wife, then 20 years old, was a high school graduate and pregnant with Husband's child. Wife had no assets or resources when she

was married. Two days before the wedding, Husband gave Wife an antenuptial agreement to sign. The agreement provided:

> JOHN PAUL STARCEVICH and MARY SUE HILL, agree and covenant with the other in view and consideration of said proposed marriage, that so far as it is legally possible by their private act and agreement, all the property belonging to either of them at the commencement of the marriage, or acquired by or coming to either of them during the marriage, shall be held and enjoyed by him or her, and be subject to his or her disposition as his or her separate property in the same manner as if said proposed marriage had never been celebrated.

No disclosure of assets was attached to the document. Husband did not discuss the agreement with Wife before presenting her with same. Wife was only provided with the agreement to review on the day of execution and she did not consult with an attorney nor did Husband suggest that she do so. Husband admitted it would be difficult for his pregnant girlfriend if he did not marry her.

¶ 3 Wife worked in Husband's dental office, without compensation, for less than sixty (60) days prior to the wedding. She testified she did not know the value of the dental practice and had no knowledge of Husband's other assets. Wife was a housewife and the children's caretaker during the marriage. Husband maintained tight control over the parties' finances throughout the marriage. Husband would give Wife a set sum of cash each week to spend on family needs. Wife had to seek Husband's permission to withdraw additional monies from bank accounts.

¶ 4 For a few years during the marriage, Wife ran a home day care. Otherwise, Wife relied entirely upon Husband's income from his dental practice for her support. In the last decade of the marriage, Wife received a vocational technical certificate and worked outside the home as a teacher, pre-school director and summer camp director at a church. With the exception of the marital home and an occasional account, Husband titled the rest of the parties' investments, bank accounts and real property in his name.

¶ 5 Wife filed for dissolution of the marriage in November 2010. The parties' assets included checking and savings accounts, retirement accounts, investment accounts, Husband's dental practice, the marital home, a ranch, numerous vehicles and various other types of personal property. In 2011, the trial court entered an order regarding the validity of the antenuptial agreement. The trial court held Wife could not knowingly waive her rights to property acquired during the marriage under the version of 43 O.S. § 121 (formerly 12 O.S. § 1278) in effect when the agreement was executed. The court held such waiver was contrary to the public policy pronounced in *Taylor v. Taylor,* 1991 OK CIV APP 126, 832 P.2d 429; therefore, that portion of the agreement is unenforceable. The trial court held the agreement was valid to the extent Wife waived any claims to Husband's dental practice. Implicit in that ruling was the trial court's determination that Wife also waived any claims to the enhanced value of the dental practice accrued during the marriage. The trial court later clarified all income and profits earned and derived from the dental practice during the marriage, which were not reinvested into the practice, and any assets purchased therefrom are a part of the marital estate.

¶ 6 After a merits trial, the trial court awarded Husband the dental practice. The trial court did not award Wife with an equitable share of the increase in value of Husband's dental practice. The trial court awarded separate property to each party and reduced the value of the marital property by the amount of Husband's inheritance. The trial court equally divided the remainder of the property acquired during the marriage and awarded each party with his and her equitable share. The trial court awarded Wife support alimony and attorney's fees. Both parties appealed.

¶ 7 A divorce suit is one of equitable cognizance in which the trial court has discretionary power to divide the marital estate. *Colclasure v. Colclasure,* 2012 OK 97, ¶ 16, 295 P.3d 1123. Section 121 of Title 43 mandates a trial court to effect a fair and equitable division of property acquired during the marriage by the joint industry of the

husband and wife. The trial court has wide latitude in determining what part of jointly-acquired property shall be awarded to each party; it does not need to equally divide the marital estate in order for it to be an equitable division. *Colclasure* at ¶ 16. This Court will not disturb the trial court's property division absent a finding of abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. *Id.* Questions of law in a dissolution of marriage proceeding are reviewed *de novo;* this involves a plenary, independent and non-deferential examination of a trial court's legal rulings. *Jackson v. Jackson,* 2002 OK 25, ¶ 2, 45 P.3d 418.

¶ 8 Husband first argues the trial court erred in holding the prenuptial agreement was unenforceable under the prior version of § 121 to the extent it deprived either party of assets acquired during the marriage. Husband claims he traced existing accounts and assets directly to his separate property, *i.e.,* the proceeds from his dental practice. Based on this evidence, Husband claims the trial court erred in awarding Wife one-half of these assets because she contractually waived her right to same under a valid antenuptial agreement.

¶ 9 Husband also submits the trial court erred in relying on *Taylor* to make its ruling. *Taylor* held an antenuptial agreement which seeks to prohibit a spouse from being awarded an equitable division of the property acquired by the parties during marriage as a result of the joint efforts of the parties violates the public policy articulated in § 1278 (and consequently 43 O.S. § 121); therefore, it is unenforceable. According to Husband, *Taylor's* articulation of public policy was non-binding, lacked precedential value and was immediately rejected by the Legislature the following year. In 1992, the Oklahoma Legislature amended § 121 by Laws 1992, c. 252, § 3, *eff.* Sept. 1, 1992, to permit the waiver of the right to an equitable division of jointly acquired property by an antenuptial agreement. Husband also submits

*Taylor* is inapplicable because the amendment to § 121 was intended to clarify the law, and thus, it should have retroactive application.

¶ 10 Husband's arguments lack legal merit. Except for the addition of the new language "subject to a valid antenuptial contract in writing," § 121 remained the same. We therefore hold the amendment to § 121 clearly evinced legislative intent to *change* the law in response to the *Taylor* ruling. "Where the meaning of a statute has been the subject of judicial determination, the subsequent amendment thereof reasonably indicates the legislative intention to change the law." *Tom P. McDermott, Inc. v. Bennett,* 1964 OK 197, ¶ 12, 395 P.2d 566. We also hold this *change* to § 121 had prospective application only because the Legislature did not expressly provide for a retroactive application of the amendment to § 121. Unless the Legislature clearly expresses a contrary intent, amendments that represent substantive changes to existing law are applied prospectively only. *Reimers v. State, ex rel. Dept. of Corrections,* 2011 OK CIV APP 83, ¶ 30, 257 P.3d 416.

¶ 11 We now address whether the trial court properly applied the law in force when the antenuptial agreement was made [1] to render its decision in this proceeding. In 1978, when the parties executed the antenuptial agreement, § 1278 did not contain the conditional language at issue herein. In 1978, § 1278 provided:

> [A]s to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether title thereto be in either or both parties, the court shall make such division between the parties as may appear just and reasonable by the division of the property in kind, or by the setting of the same apart to one of the parties and requiring the other thereof to pay such sum as may be just and proper to affect a just and fair division thereof.

1. "This case must be determined under the statute which was in force on the date the contract was executed, since it is the law in force at the time an agreement is made effective that determines the validity and effect of such agreement." *Tom P. McDermott, Inc.,* 1964 OK 197 at ¶ 13, 395 P.2d 566.

¶ 12 In construing statutes, the word "shall" normally implies a command or mandate depending upon the construction of the statute as a whole and the intention of the Legislature. *Oklahoma Alcoholic Beverage Control Bd. v. Moss,* 1973 OK 45, ¶ 11, 509 P.2d 666. Thus, under the law in effect when the antenuptial agreement was executed, it is clear any property acquired by the parties jointly during the marriage, regardless of how title is held, *shall* be justly and reasonably divided by the trial court. *See also Manhart v. Manhart,* 1986 OK 12, ¶ 38, 725 P.2d 1234, 1240 (there is a *prima facie* presumption that property acquired during coverture is property acquired by the joint efforts of husband and wife). Consequently, we hold the trial court properly applied the then existing statute and settled law in *Taylor* to invalidate Wife's prenuptial waiver of an equitable division of marital property. We hold in this manner even though later public policy permitted spousal waivers of such property under a valid antenuptial agreement.

¶ 13 Husband next argues the trial court erred in awarding attorney fees to Wife because the trial court's basis for making the fee award will be nullified by this Court's reversal of the trial court's ruling invalidating a portion of the prenuptial agreement. Because we affirm this portion of the trial court's decree, this challenge to the attorney fees award is extinguished. Husband poses no other challenges to the attorney fees award. We will not reverse the district court's award of attorney fees unless that award appears to be an abuse of discretion. *Merritt v. Merritt,* 2003 OK 68, ¶ 20, 73 P.3d 878. The statutory authority to award attorney fees in a dissolution of marriage action depends upon a judicial balancing of the equities in the case. *Thielenhaus v. Thielenhaus,* 1995 OK 5, ¶ 19, 890 P.2d 925, 934. Because Husband failed to take exception to the trial court's award based on a balancing of the equities, we hold the trial court did not abuse its discretion in awarding Wife her attorney fees.

¶ 14 On counter-appeal, Wife argues the trial court erred when it found the antenuptial agreement was valid. Wife claims the agreement was unenforceable because it was procured by fraud, coercion and over-reaching. "Unless affected by fraud, duress, coercion, overreaching, or the like, an antenuptial agreement will be enforced according to its terms." *In re Marriage of Neundorf,* 2006 OK CIV APP 10, ¶ 11, 131 P.3d 142. In considering the validity of an antenuptial agreement, the court should consider whether the agreement afforded a "fair and reasonable provision" for a spouse, whether it provided a "full, fair and frank disclosure of the other spouse's worth made before execution of the contract," *or* whether the parties were provided with a "generally accurate knowledge of the other's worth." *Matter of Burgess' Estate,* 1982 OK CIV APP 22, ¶ 19, 646 P.2d 623.

¶ 15 Although this agreement made no provision for Wife, and Husband failed to disclose his financial worth to Wife before she signed the agreement, we hold Wife knew or should have known the general nature of Husband's financial worth. Wife was aware that Husband owned a dental practice before she married him. In fact, she worked at the practice for a short time before the marriage. Wife also lived with Husband prior to their marriage. Thus, even though no list of assets was provided, Wife should have possessed a general accurate awareness of Husband's worth. We therefore hold the trial court properly upheld the validity of the antenuptial agreement as it pertains to Wife's waiver of a claim to Husband's separate property.

¶ 16 However, we hold the trial court abused its discretion when it found Wife contractually waived any claim to an equitable share of the increase in value of Husband's separate property which can be attributed to the joint industry of either spouse. The antenuptial agreement herein does not address either party's right to an equitable share of the enhanced value of the other party's separate assets. Also, the law in effect when the parties married mandated the trial court to properly divide any property accumulated by the joint industry of the spouses during the marriage, regardless of how title is held. The term jointly acquired property .also includes the increased or enhanced value of a spouse's separate property which is produced by the efforts, skills or funds of either spouse. *Thielenhaus,* 1995 OK 5 at ¶ 9, 890 P.2d 925.

¶ 17 The record reflects Husband purchased his dental practice for $14,000.00 shortly before the parties married. The evidence showed both Wife and Husband worked at Husband's dental practice and that Wife deposited earnings and profit from the dental practice as directed by Husband. The evidence also demonstrated that Wife devoted most of her efforts in running the marital home, maintaining the yard, and raising children while Husband practiced dentistry and managed, invested, and acquired assets with the substantial earnings and profits from his dental practice.

¶ 18 However, because the trial court treated the dental practice and its enhanced value as Husband's separate property early on in the proceeding, there was no opportunity for a meaningful inquiry into whether the value of Husband's dental practice was enhanced by the labor or skills of either spouse or the use of spousal funds. Accordingly, we reverse this portion of the decree and remand this matter to the trial court to provide Wife, who has the burden, with the opportunity to present proof of the enhanced marital component in Husband's dental practice.

¶ 19 In determining Wife's quantum of interest in Husband's dental practice, the trial court must consider (a) the cost/value of the separate property; (b) the non-divisible in-marriage enhancement caused by inflationary factors or other marketplace forces producing appreciation in price levels (unrelated to efforts of labor); and (c) the increase in value, if measurable by proof, which is due to personal efforts, skills or expended funds of the spouses' labor. *Thielenhaus* at ¶ 10 (citation omitted). After the trial court conducts this inquiry, Wife, as the non-owning spouse, is entitled to an equitable share that may be ascribable, not to mere appreciation in value, but purely to efforts of labor and expenditure of funds.

¶ 20 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

MITCHELL, J., and GOREE, J., concur.